[No. 26273. Department Two. December 11, 1936.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR HUSSEY, *Appellant.*[1]

[1]Reported in 62 P. (2d) 1350.

*E. K. Brown,* for appellant.

*E. W. Schwellenbach,* for respondent.

HOLCOMB, J.—On an information duly filed in the superior court of Washington for Grant county, appellant was charged with the crime of grand larceny, in that he did, in Grant county, Washington, on or about September 11, 1935, then and there unlawfully and feloniously, with intent to deprive and defraud the owner thereof, take, lead and drive away seven steers, the property of one George Drumheller, of the approximate value of $330.75.

After a plea of not guilty, appellant was tried by a jury in that county and found guilty as charged. A motion in arrest of judgment and a motion for a new trial were made and denied. Thereupon, judgment and sentence were pronounced against him, from which he appeals.

Since 1904, Drumheller has owned and operated a ranch of approximately 25,000 acres, of which 17,000 acres are in the southeasterly part of Grant county and about 8,000 acres in the northwesterly portion of Adams county, on which he raises graded Hereford and Shorthorn cattle; the headquarters of the ranch being in section 4, township 17 north, range 28, in Grant county. All of the cattle are branded with a "railroad brand," which consists of two parallel, vertical lines placed on the left hip, and is usually done in June. In addition, the left ears are cropped. This brand has been filed with the county auditor of Grant county and also with the state division of dairy and livestock.

In the spring, the cattle are turned off of the two feed lots, which are enclosed, onto the open land. In 1935, the spring roundup began about May 23rd, and the cattle, including 640 steers, were kept in the pasture until July 4th, the cows being turned out from section 14, township 17 north, range 28, and the steers from section 28, township 18 north, range 28, all in Grant county. The steers had been kept separate and had been raised in what was called the sand hills or pot holes, and when turned out, about seven miles north of the Adams county line, went west and north.

In the fall of 1935, Drumheller made arrangements to sell 650 steers and 169 cows to Hansen, Sharp and Dunnington, of Ellensburg, but could only find 605 steers (yearlings, two-years old and three-years old), which included four steers later found in Adams county by Whitehead, a rider for Drumheller, when the first delivery was made October 6th.

In 1932, Drumheller sold 180 steers to one Colvin on the John Day river, about one hundred miles southwest of Pendleton, Oregon, but did not sell, give away or dispose of any cattle during 1933 and 1934.

Prior to September 1, 1935, Drumheller had not sold, given away or consented to any one taking any steers, nor had Perry, his foreman, nor had he ever sold any steers to appellant.

Appellant lives in Kent, King county, but since 1930 has been running a small horse ranch in Grant county in section 30, township 19 north, range 26, which is only twenty-two miles, by section lines, from the headquarters of the Drumheller ranch.

The evidence was palpably conflicting, but there was ample and competent testimony to prove to the satisfaction of the jury that the seven steers described in the information were taken from the range in Grant county.

Among witnesses produced by appellant was one Sieler, who the jury were entitled to believe was credible, who testified that, in looking for 170 head of his own cattle which had strayed, he passed through the Adams county part of the Drumheller ranch a number of times after the roundup in 1935 and that he only saw four Drumheller steers in Adams county, which were evidently the ones found by Whitehead and delivered to the Ellensburg buyers.

We agree with counsel for appellant that we are not here concerned with the rule that where a crime has been committed partly in one county and partly in another, the jurisdiction may be laid in either county; nor with the rule that crimes committed within one hundred rods of the boundary line of two counties may be prosecuted in either county.

Appellant cites Rem. Rev. Stat., § 2012 [P. C. § 9394], to the effect that, except as otherwise specifically provided by statute, all criminal actions shall be commenced and tried in the county where the offense was committed, and Art. I, § 22, Washington constitution (10th Amendment), providing that, in all

criminal prosecutions, the accused shall have the right to speedy trial by an impartial jury of the county in which the offense is alleged to have been committed.

That was the procedure followed here. Neither the statutory nor the constitutional provision has in any way been violated in this prosecution. The state did not fail to prove venue, as stated in the information, in Grant county, although there was no direct testimony that the cattle were taken from Grant county, under our rule as announced in *State v. Kincaid*, 69 Wash. 273, 124 Pac. 684; *State v. Dooley*, 82 Wash. 483, 144 Pac. 654; *State v. Williams*, 124 Wash. 160, 213 Pac. 921. See, also, *State v. Uren*, 39 S. D. 15, 162 N. W. 745.

On September 6, 1935, appellant delivered seven live head of cattle to one Ey, a butcher and packer, at Auburn, Washington. The state proved that the seven steers described in the information were, on September 11, 1935, also delivered alive in a truck to Ey, and that both loads of animals had the railroad brand. In October, the Grant county sheriff went to the Ey feed lot, where he found a lame steer bearing the same brand. After the steer was butchered, the sheriff procured and preserved the hide.

Appellant made the flimsy defense, which was evidently disbelieved by the jury, that he had purchased two lots of cattle from a man named Reese, whom he had previously known in the Willapa Harbor country, probably a confederate, from whom he used the well-known device, to make a showing of title, of obtaining a bill of sale for the twelve steers and two cows, which was acknowledged before a notary public in Auburn. This notary public did not know Reese, had never seen him before, never saw him afterwards, and he was not produced at the trial in defense of appellant.

The live cattle sold by appellant to Ey were thus shown to have been in possession of appellant before they were sold to Ey. The cattle having been stolen from Drumheller, as the jury, reconciling all of the evidence, had the right to believe, the *corpus delicti* was amply proven, as well as the venue. Therefore there is no merit in the contention that the *corpus delicti* was not shown.

Another complaint of appellant is that the court erred in admitting evidence of the transaction of September 6, 1935, in the sale of that truck load of live cattle to Ey, including the check given as payment, and in refusing to strike the evidence. It is contended that this constitutes evidence of other offenses, very prejudicial to appellant.

Evidence of other offenses is admissible where they tend to show a scheme, system or course of conduct implying a guilty intent on the part of the accused. *State v. Schuman*, 89 Wash. 9, 153 Pac. 1084, Ann. Cas. 1918A, 633; *State v. Clamp*, 164 Wash. 653, 3 P. (2d) 1096, 80 A. L. R. 1302; *State v. Schultz*, 168 Wash. 120, 10 P. (2d) 980; *State v. Linden*, 171 Wash. 92, 17 P. (2d) 635; *State v. Shay*, 186 Wash. 154, 57 P. (2d) 401.

Evidence that other attempts were committed at a different time is properly admitted for the purpose of proving the criminal intent of the defendant. *State v. Wray*, 142 Wash. 530, 253 Pac. 801. See, also, *State v. Stevenson*, 169 Wash. 10, 13 P. (2d) 47.

Appellant objects to the rebuttal testimony of witnesses Tipton and Martin for the state.

Tipton testified that he was returning at night from Cle Elum with a load of fuel on about September 1, 1935, and met appellant going down the grade to Vantage bridge in a truck with a load of cattle, and that he distinctly saw the white faces of the cattle.

Doubtless, this testimony was a part of the state's case in chief, but the objection urged against it that it was given in rebuttal, instead of in chief, is not valid. *State v. Turfey,* 100 Wash. 5, 170 Pac. 335.

Appellant attempted to contradict this evidence by the testimony of other witnesses to the effect that the faces of the cattle could not have been seen at night because of the construction of his truck. This truck was in Ephrata at the time of the trial, and the jury inspected it and were therefore better able to judge of the credibility of appellant and of Tipton than are we.

Appellant testified that he had not purchased nor hauled any cattle from that part of the country since he bought a car load from one Rasor on Crab creek, Grant county, four or five years before. He further testified that, after delivering the first load to Ey, on September 6th, he stayed on the coast until the day after he sold the last load.

Martin was cashier and manager of the Quincy Valley Bank and testified that appellant owed the bank a note, dated July 24, 1935, for $350, and that appellant paid the note personally to him on September 7, 1935, the day after the first lot of cattle had been delivered to Ey, which contradicted the testimony of appellant that he remained on the coast until the day after he sold the last load on September 11th. Of course, that testimony was prejudicial, but it was competent as proper rebuttal.

The record has been carefully examined, largely from the statement itself, because of the many inconsistencies in the two abstracts needing to be verified. We are satisfied that appellant had a fair trial and was fairly convicted. We have discussed all of appellant's assignments of error which we consider meri-

torious. Eighteen errors were assigned which are argued under nine headings.

Six of the errors assigned will not be discussed because of the noncompliance of appellant with Rule of Supreme Court VIII, § 1, 159 Wash. xliii. These rules of court have been amended so that they apply to criminal appeals.

One assignment of error is in giving a portion of instruction No. 15, which instruction is not set out in full in the brief. The other assignments of error are in refusing to give requested instructions of appellant. None of these are set out in full in the brief, for which reason we will not consider those assignments. Respondent makes no point of this, but we must do so for our own protection and to enforce compliance with the rules of court. See *Drainage Dist. No. 2 v. Everett,* 171 Wash. 471, 18 P. (2d) 53, 88 A. L. R. 123; *Keseleff v. Sunset Highway Motor Freight Co.,* 187 Wash. 642, 60 P. (2d) 720.

Other claims of error have been considered, and we deem them without merit.

The judgment and sentence are affirmed.

MILLARD, C. J., TOLMAN, MITCHELL, and BEALS, JJ., concur.