[No. 27466.   Department Two.   May 5, 1939.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSE A. KNABB, *Appellant*.[1]

[1]Reported in 90 P. (2d) 250.

*W. A. Beakley, H. Sylvester Garvin,* and *George F. Vanderveer,* for appellant.

*Ralph E. Purves,* for respondent.

BEALS, J.—The defendant herein, Jesse A. Knabb, mayor of the city of Bremerton, together with one Peter Desimon, was charged by information with the crime of conspiracy. Certain issues of law having been determined against the contentions of defendant Knabb, he entered a plea of not guilty. Upon his trial, the jury returned a verdict of guilty as charged. His motions for judgment declaring him not guilty notwithstanding the verdict, and for a new trial, having been denied, the court entered a judgment of guilty, pursuant to the verdict, and sentenced defendant to confinement in the county jail for the term of twelve months, also imposing a fine in the sum of one thousand dollars. From this judgment, defendant Knabb has appealed to this court.

Appellant assigns error upon the denial of his motion for a directed verdict and upon the denial of his motions asking, respectively, for judgment in his favor notwithstanding the verdict, and for a new trial. He also assigns error upon the giving of four instructions; upon the refusal to give several instructions which he requested; upon rulings of the trial court sustaining objections to questions propounded by appellant on cross-examination of a witness for the state; upon the refusal of the trial court to admit evidence offered by appellant; and upon remarks made by the trial court in the presence of the jury.

Appellant's codefendant, Peter Desimon, had previously been charged with the crime of bribery, to which he had pleaded guilty. Upon the joint trial of Desimon and appellant in the case at bar, Desimon, during the course of the trial, entered a plea of guilty of the crime of conspiracy. Up to the time of the trial of the instant case, Desimon had not been sentenced upon his plea of guilty to the crime of bribery, and the record before us does not show the imposition of any sentence upon him upon his plea of guilty entered in this case.

By the information on which appellant was tried, he and Desimon were charged with the crime of conspiracy, in that they unlawfully conspired

". . . to cause to be established and operated under the management and supervision of the said defendants, in the city of Bremerton, county of Kitsap, state of Washington, gambling games, games of chance, gambling devices and the sale of lottery tickets, which said unlawful agreement and conspiracy is more particularly set forth as follows: That the said defendants agreed to procure a business location in the city of Bremerton in which would be conducted for the public by Chinese attendants various games of chance whereby money could be wagered or hazarded upon a chance or uncertain or contingent future event;

that in said establishment would be conducted a game of cards commonly called 'Black Jack,' a game of dice commonly called 'Crap,' and a game of dice commonly called 'Chuck-a-Luck;' that in addition lottery tickets would be offered for sale in said establishment; that the said defendants agreed to place in operation in various public places in the said city of Bremerton various gambling devices commonly called 'automatic pay off pin-ball machines' and to procure licenses for the operation of said pin-ball machines from the city of Bremerton; that the licenses should be used to disguise the illegality of said pin-ball machines as gambling devices, and to give an appearance of legality to the same; that the said defendants agreed to endeavor by persuasion and the promise of monetary reward to induce Ralph E. Purves, the duly elected, qualified and acting prosecuting attorney of Kitsap county, in his official capacity not to enforce the gambling laws of the state of Washington with respect to the said gambling games and devices to be operated by the said defendants . . ."

It appears that appellant and Desimon became acquainted during the month of January, 1938. Desimon, who was called as a witness for the state in the case at bar, testified that he suggested to appellant, who was then mayor of the city of Bremerton, the opening of a gambling resort in Bremerton, to be conducted by Chinese employees. The evidence shows that Desimon met Ralph E. Purves, prosecuting attorney of Kitsap county, at the latter's office on or about January 28, 1938, by means of a letter of introduction from a Seattle attorney. Desimon thereafter called on Mr. Purves a dozen or more times, discussing the opening of a gambling hall and the operation of pinball machines. Desimon was willing to bribe Mr. Purves to permit Desimon to accomplish his ends, and Mr. Purves, in order to obtain information as to the unlawful activities of Desimon and other law breakers, was will-

ing to allow Desimon to believe that he could purchase Mr. Purves' inactivity by means of bribes.

Mr. Purves had installed in his office a dictaphone, connected with wires running to an adjacent room, where persons could listen over the dictaphone to the conversations in the prosecutor's office.

During the months of February, March, and April, 1938, Desimon paid certain sums of money to Mr. Purves, and also gave him a present of some wearing apparel. Both money and apparel, having been marked and preserved, were introduced in evidence on the trial of the bribery action.

Late in January, 1938, Desimon and appellant called upon the prosecuting attorney, the matter of the opening of a gambling hall in Bremerton and the installation of pinball machines being subjects of discussion. Mr. Purves, testifying for the state in the case at bar, said that Desimon and appellant, while in his office on January 28th, outlined in some detail a plan to operate a Chinese gambling establishment, and also to install pinball machines, Desimon on this occasion stating that he wanted both appellant and Mr. Purves to realize considerable sums of money from these operations.

Concerning the proposed scheme, Mr. Purves testified in substance as follows: Desimon called upon Mr. Purves to ascertain the latter's attitude toward the contemplated establishment of a gambling hall in Bremerton, Desimon stating that, if everything was satisfactory, he would like to discuss the matter with Mayor Knabb (appellant), whereupon the prosecutor told Desimon that he could bring appellant to the prosecutor's office, where the matter could be talked over. Soon thereafter, Desimon and appellant called at Mr. Purves' offices, where, after some reference to past differences between Mr. Purves and appellant, Desimon suggested that past events be forgotten, and

that the spirit of friendly cooperation characterize the future relations between the prosecutor and the mayor.

Appellant and Desimon then engaged in some conversation concerning the attitude of Mr. Purves toward the operation of a Chinese gambling resort. Desimon said that he had spoken to appellant about this matter, and that appellant had said that it was all right with him, and that he would like to see such a resort established. Appellant confirmed this, saying that he wanted to see a gambling hall in Bremerton, which, being a navy town, needed such a resort, appellant suggesting that the place be operated by Chinese, because he believed that they would give the gamblers "a better break with their money." The location of the proposed gambling hall was discussed, it being finally agreed between appellant and Desimon that a room on the street level would be preferable to an upstairs room; that there should be operated crap and chuck-a-luck games and a black jack game; and that lottery tickets should be sold, and four or five drawings held each day. It was considered best that only enlisted men in uniform should be admitted. Appellant and Desimon suggested that the prosecutor refrain from interfering with gambling in Bremerton, unless some rival establishment should open, in which event he (appellant) wanted the prosecutor's assurance that all possible steps would be taken to put the competitors out of business. Desimon and appellant were of the opinion that the police should make an occasional arrest of some employee of the gambling hall; that bail in the sum of twenty-five dollars should be posted and forfeited; and that the man arrested should then return to work. Mr. Purves testified that he agreed to nothing, but simply allowed Desimon and appellant to talk as they would.

Desimon and appellant stated that they wished to

install and operate automatic pay-off pinball machines, and about thirty of these were installed, pursuant to city licenses regularly issued. Mr. Purves testified that, on one occasion, Desimon stated that the pinball machines were doing well, and exhibited to Mr. Purves a profit and loss statement for the first month's operations, the statement showing disbursements in the sum of four hundred dollars.

Mr. Purves called attention to the fact that he had received from Desimon seventy-five dollars each month, and inquired as to other persons to whom Desimon was paying money, Desimon stating that he was paying appellant fifty dollars a month. Desimon also told Mr. Purves that he had taken appellant to a number of Chinese gambling resorts in Seattle, to show appellant how "it was done."

The testimony of Mr. Purves as to statements made by appellant and Desimon was corroborated by Charles Lewis, the chief of police of Bremerton, and R. C. Cox, who had been for a time employed by the prosecutor as an investigator, both of these witnesses having heard over the dictaphone the conversation between Desimon, appellant, and Mr. Purves, in the latter's office on January 28th.

Desimon, testifying as a witness in the case at bar, stated that he had told appellant that, if the enterprise were successful, he would take care of everybody that he "would have to." Desimon also testified that, on an occasion when appellant was in the city of Seattle, he took appellant to several places where gambling was going on, and that he and appellant discussed the manner of operation of such resorts, he testifying that he then told appellant that he would like to open a gambling resort in Bremerton, if it could be arranged. The witness also testified that appellant then stated that he thought the idea a good one, as

there was no gambling going on in Bremerton, and that the establishment of a gambling hall therein would be all right with appellant, if it were satisfactory to Mr. Purves. It was after this conversation with appellant that Desimon made several visits to Mr. Purves, Desimon further testifying that he told both appellant and Mr. Purves that he would rather commence operations by the establishment of pinball machines, and that he placed thirty such machines in operation.

Desimon also testified that, on or about February 25, 1938, he gave appellant one hundred dollars; that approximately one month later, he paid appellant the further sum of seventy-five dollars.

Messrs. L. H. Thomas and Loren Mullins, officers of the state patrol, testified that, on April 19, 1938, they were in the room adjacent to the prosecutor's office, when Desimon called on Mr. Purves, and that the witnesses heard, over the dictaphone, the conversation between Desimon and Mr. Purves. In this conversation, Desimon stated that he was paying Mr. Purves seventy-five dollars per month, and appellant fifty dollars per month.

Appellant, taking the stand as a witness on his own behalf, testified as to his meeting with Desimon, and that the latter then discussed the matter of gambling in Bremerton. Appellant testified that he went with Desimon to Mr. Purves' office, and that the subject of gambling was there talked over. Appellant denied that he had agreed not to interfere with the operation of a gambling hall, stating that the only reason he went to the prosecutor's office with Desimon was to obtain information as to what Mr. Purves intended to do, appellant denying that he had ever accepted any money from Desimon. On cross-examination, appellant admitted that, on several occasions while in Seattle, he, with Desimon, visited gambling establishments.

It is not contended by respondent that any gambling hall operated by Chinese or other persons was ever actually opened in Bremerton, but evidence was introduced in the case at bar from which the jury might have found that an agreement to open and operate a gambling hall at some future date was entered into, and it is clear that pinball machines were placed in operation.

The court instructed the jury that no evidence had been introduced to prove that the pinball machines referred to in the information and in the testimony were gambling devices, within the meaning of the statute, the jury being instructed that they could consider the evidence concerning pinball machines in its relation to the proposed scheme or plan of defendants Knabb and Desimon as charged in the information. The evidence shows that the operation of the pinball machines was considered as a prelude to the contemplated opening of a regular gambling hall, and since money derived from the operation of the machines was, according to the evidence, paid to Mr. Purves and to appellant, the jury were instructed that they could consider this in connection with the evidence concerning the plan to conduct gambling operations.

In Rem. Rev. Stat., § 2382 [P. C. § 8783], the crime of conspiracy is defined, the pertinent portions of the section reading as follows:

"Whenever two or more persons shall conspire—

"(1) To commit a crime; or . . .

"(4) To cheat or defraud another out of any property by unlawful or fraudulent means; or . . .

"(6) To commit any act injurious to the public health, public morals, trade or commerce, or for the perversion or corruption of public justice or the due administration of the law; or

"(7) To accomplish any criminal or unlawful pur-

pose, or to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means;

"Every such person shall be guilty of a gross misdemeanor."

In a criminal conspiracy, it is not necessary to allege and prove an overt act as a necessary element of the crime.

In the case of *State v. Stewart*, 32 Wash. 103, 72 Pac. 1026, an information was filed, charging James G. Stewart and O. V. Lawson with the crime of unlawfully conspiring and agreeing together to obtain in advance, for a monetary consideration, from a member of the state medical examining board for the state of Washington, a copy of the questions agreed upon by that board to be propounded at the ensuing medical and surgery examination. It was also charged in the information that it was agreed between the defendants that Stewart was to prepare answers to the questions so procured from the board, and deliver the questions and answers to Lawson, so as to enable him fraudulently to pass the examination and thereby to obtain, by cheating, a license to practice medicine and surgery in the state of Washington. Stewart and Lawson dealt with each other through an intermediary, it appearing that Stewart represented to this man that he could obtain the questions from one Dr. Wilson, supposed to be a member of the state medical board. Upon the trial, the defendants were found guilty, whereupon they appealed.

In the course of the trial, it was stipulated between the prosecuting attorney and defendant Lawson that the state considered that no person charged in or connected with the conspiracy charged in the information, applied to or obtained from any member of the state medical examining board a copy of the questions which were to be propounded by the board at the next ex-

amination, and that no application was made to any member of the board to deliver such a set of questions, for money consideration, or otherwise. On appeal, it was contended by the appellants that the stipulation negatived every allegation in the information, and thereby established a fatal variance between the allegations of the information and the proof. Concerning this phase of the case, the court, in affirming the conviction, said:

"So far as the stipulation is concerned, it can make no material difference whether the questions were obtained from the board or not, or whether they were obtained at all or not, as the offense charged is the unlawful agreement to so obtain them. It appears plainly from the testimony that the intent of the appellants was to unlawfully obtain for Lawson the certificate or license desired. The crime was completed when they entered into the agreement to defraud the state medical board in the manner proposed. Neither the character nor the proper definition of a crime is dependent upon the success or failure of the enterprise."

In *State v. Mardesich*, 79 Wash. 204, 140 Pac. 573, the defendants were charged with the crime of conspiracy. The court said:

"The charge against the defendants was not that of hindering or interfering with any one in the taking of fish, but was the conspiring to prevent any one outside the combine from fishing. The offense is complete when the agreement or confederation constituting the conspiracy is formed. It is not necessary that an act in pursuance thereof be committed. In 1 Bishop, New Criminal Law, § 432, it is said:

" 'The mere conspiring of two or more persons to do a wrong is an adequate act of crime without any step taken in pursuance of the conspiracy.' "

In *State v. Nolon*, 129 Wash. 284, 224 Pac. 932, the court observed:

"This information charges the defendants jointly with the crime of burglary in the second degree, and it does not charge them with a conspiracy to commit a crime. In a conspiracy it is not necessary to allege and prove an overt act as a necessary element of the crime."

See, also, 1 Bishop on Criminal Law (9th ed.), 313-314, § 432; 2 Wharton's Criminal Law (12th ed.), 1927, § 1651.

Appellant strenuously argues that the trial court erred in denying his motion for a directed verdict and for judgment notwithstanding the verdict, for the reason that the evidence shows that appellant was guilty of no conspiracy to accomplish any unlawful act; that appellant was to have no part in operating any gambling game or device; and that appellant was neither to pay nor promise to pay to Mr. Purves anything of value to induce the latter not to interfere with Desimon's operations.

In the case of *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989, the defendant had been indicted for the crime of asking for, accepting, and receiving a bribe. The defendant was convicted, and appealed to this court. In considering appellant's contention that the court erred in denying his motions for a directed verdict and, upon a denial of that motion, for a new trial, this court reviewed the evidence at length, and concluded that the trial court had not erred in denying these motions, saying:

"There was evidence proper to go to the jury and tending to establish every element of the crime charged in the indictment. The weight and credibility of this evidence was for the jury. The trial court did not feel warranted in directing a verdict for the defendant nor in granting a new trial. In such cases, we have uniformly declined to interfere. To do so would be a plain usurpation of the functions of the jury."

The court continued, quoting from 12 Cyc. 906, as follows:

"It is difficult to formulate a general rule stating the extent to which appellate courts will pass upon the weight and sufficiency of evidence and reverse because of an insufficiency of evidence, but the general rule seems to be that where there is material evidence tending to prove defendant's guilt before the jury, and the trial court refuses to set their verdict aside, an appellate court will not reverse the action of both the trial court and the jury; that it will examine the record to see whether there is evidence proper to go to the jury, and upon which a verdict of guilt might reasonably be founded, and, being satisfied on that point, will refuse to interfere, whatever may be its own opinion of the weight or preponderance of the evidence. If, however, the verdict of the jury is altogether unsupported by any evidence whatever, or if it is against the evidence and every proper inference which is reasonably deducible therefrom, the judgment will be reversed by the appellate court."

In the course of the opinion, attention was called to the difficulty met in formulating a general rule embodying a formula which appellate courts will follow in passing upon the weight and sufficiency of evidence. The opinion in the case cited is long, but much of the discussion is pertinent to the questions presented in the case at bar.

The question of the establishment of a *prima facie* case concerning a conspiracy to commit a crime, was discussed in the case of *State v. Dilley*, 44 Wash. 207, 87 Pac. 133. The case is of interest in connection with the questions here presented.

While the evidence is not free from conflict, we are convinced that there was sufficient evidence of participation by appellant in an unlawful conspiracy to warrant the submission of the case to the jury. The credibility of the witnesses and the weight to be attached

to their testimony were for the jury. Sufficient evidence was introduced, if believed by the jury, to warrant the jury in finding that appellant and Desimon had entered into a criminal conspiracy. The trial court did not err in denying appellant's motion for a directed verdict, or in denying his motion for a judgment in his favor notwithstanding the verdict.

■ Appellant assigns as error the giving of four instructions to which he excepted. If error is assigned before this court upon the giving of an instruction, the instruction complained of must be set forth in full in appellant's opening brief, according to rule XVI, subd. 5, Rules of Court, 193 Wash. 25-a, which reads as follows: "Where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full."

Instructions 3 and 5, of which appellant complains, are not set forth in appellant's opening brief, and instruction 13 is printed only in part. Consequently, appellant's assignments of error based upon the giving of these instructions cannot be considered. *Lund v. Seattle,* 163 Wash. 254, 1 P. (2d) 301; *Scott v. Pacific Power & Light Co.,* 178 Wash. 647, 35 P. (2d) 749; *State v. Hussey,* 188 Wash. 454, 62 P. (2d) 1350; *State v. Jensen,* 194 Wash. 515, 78 P. (2d) 600; *Moffitt v. Goldcamp,* 195 Wash. 75, 79 P. (2d) 695.

Instruction 14 is set forth in appellant's opening brief, and his assignment of error based upon the giving of this instruction will be considered below.

■ Appellant also assigns error upon the refusal of the trial court to give his requested instructions 1, 2, 3, 4, 5, 6, and 8. By his requested instruction 1, appellant asked that the jury be informed that Desimon had pleaded guilty to the crime of bribery and to the crime of conspiracy, and as to the penalties prescribed by law to be imposed upon those found guilty of these

crimes, and that the jury should consider to what extent, if any, the pleas of guilty which Desimon had entered affected his credibility as a witness in the case at bar. By requested instruction 4, appellant asked that the jury be told that the testimony of Desimon, as an admitted accomplice, be· scrutinized with the utmost care.

On cross-examination, Mr. Purves had testified that he had promised to recommend a lighter sentence for Desimon if the latter would appear and testify at the trial of appellant. Desimon also testified, in the case at bar, that he believed that he might be shown some consideration in connection with the sentences to be imposed upon him, if, while on the stand in the case at bar, he told the truth.

By its instruction 4, the court instructed the jury that Desimon was an accomplice, and that the jury should consider his testimony with great care, and subject it to careful examination. By another instruction, the court advised the jury that they were the exclusive judges of the credibility of the several witnesses and of the weight to be attached to their testimony. In view of the instructions which the court gave, it cannot be held that the refusal of the trial court to give appellant's requested instructions 1 and 4 constitutes reversible error.

By his requested instruction 2, appellant asked that the jury be told that no evidence had been introduced tending to prove that the pinball machines referred to in the testimony were gambling devices within the meaning of the statute; and that, from the evidence, it could not be held that the law enforcement officers were required to prohibit the operation of such machines; and that, therefore, in considering the guilt or innocence of appellant, the jury should ignore that portion of the information and the evidence

relating to pinball machines. As above stated, the court instructed the jury that no evidence had been introduced which would support a finding that the pinball machines were gambling devices within the meaning of the statute. In view of the instruction which the court gave, it cannot be held that the refusal to give the instruction requested by appellant is reversible error.

By other instructions requested by appellant, he asked that the jury be told that the crime of conspiracy is not complete until an agreement to perform the forbidden acts has been reached, and that the proof must satisfy the jury beyond a reasonable doubt that an agreement or assent of the minds of appellant and Desimon existed, whereby they conspired together to commit the unlawful acts alleged in the information. The matters covered by these requested instructions were, in essence, included in instructions which the court gave.

Considering the instructions as a whole, we find no merit in appellant's contention that the trial court erred in failing to give any of his requested instructions. *Forquer v. Hidden,* 191 Wash. 638, 71 P. (2d) 1000; *Allman Hubble Tugboat Co. v. Reliance Development Corp.,* 193 Wash. 234, 74 P. (2d) 985.

■ Appellant assigns error upon rulings of the trial court sustaining objections to questions sought to be propounded by appellant to Mr. Purves on cross-examination. Appellant sought to cross-examine the witness as to any promises of leniency which Mr. Purves had made to Desimon, as possibly influencing the latter's testimony. Examination of the record convinces us that appellant's cross-examination of Mr. Purves in this particular was not unduly restricted.

Appellant also sought to cross-examine Mr. Purves as to the latter's failure to proceed against other law

enforcement officers, and concerning the filing of the charge against appellant only. Respondent's objections to this line of cross-examination were properly sustained.

█ Appellant sought to introduce certain evidence concerning alleged facts and circumstances which he contends indicated an absence of criminal intent upon appellant's part. He also sought to introduce evidence to the effect that he had been warned of a plan to entrap him, in connection with matters similar to those charged in the information. We find no error in the exclusion of this testimony.

Error is also assigned upon certain remarks made by the trial court in the presence of the jury. Careful examination of the record convinces us that the trial court committed no error in connection with this matter.

We find no reversible error in the record. Appellant received a fair trial, and the superior court did not abuse its discretion in refusing to grant his motion for a new trial.

The judgment will stand affirmed.

BLAKE, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.

ON REHEARING.

[*En Banc.* June 29, 1939.]

PER CURIAM.—Upon a rehearing *En Banc*, the court adheres to the Departmental opinion heretofore filed herein.