[No. 30564. Department Two. June 30, 1949.]

WILLIAM J. COINS, *Respondent*, v. WASHINGTON MOTOR COACH COMPANY *et al.*, *Appellants.*[1]

[1]Reported in 208 P. (2d) 143.

*Macbride & Matthews, Thomas J. Hanify, Cameron Sherwood,* and *Herman H. Hahner,* for appellants.

*G. S. Bond* and *Judd Kimball,* for respondent.

ROBINSON, J.—At about one a.m. September 29, 1946, respondent's automobile, in which respondent was a passenger, collided with a bus owned by appellant Washington Motor Coach Company, and operated by appellant H. Edwin Allen, which was stalled across state highway No. 3 between Sunnyside and Grandview at a point just adjacent to the intersection of the Allen road. In consequence of the accident, respondent, who had been riding in the front seat, was rather severely injured, and brought this action against Allen, his wife, and the Washington Motor Coach Company. The latter cross-complained for damages to the bus. Trial was held to a jury, which returned a verdict in favor of respondent, and judgment was entered thereon in the sum of $7,822.75, together with costs and disbursements. From said judgment, this appeal has been prosecuted.

On the night of the accident, appellant Allen had been driving the empty bus along state highway No. 3 (an arterial) in the direction of Grandview. For some time he had been looking for a satisfactory place to turn his large vehicle around in order to drive it back to Sunnyside. He selected the Allen road, and turned left into it, intending to back across the highway and onto the same road at the point where it enters the highway on the opposite side. In backing, however, he missed the intersection, and his left rear wheel dropped off the gravel shoulder adjacent to the pavement. This pavement extends ten feet on each side of the yellow line in the center of the highway; the gravel shoulder is five or six feet in width. As stalled in this position, the bus blocked all of the shoulder on the south side of the highway, and the entire south lane of the pavement, and further extended four or five feet into the north lane. The headlights, the marquee lights, and an adjustable spotlight on the front of the bus were turned on, as were the small clearance lights on the top corners, and the tail lights in the rear. Whether or not the interior lights were on is a matter of dispute. There was no fog or mist, but the night was dark and probably cloudy.

At this point state highway No. 3 extends straight and level for three-quarters of a mile in the direction of Sunny-

side. On the easterly side, toward Grandview, it appears to be straight for at least a half mile. Allen got out of the bus and placed a lighted flare on the Grandview side of the bus, across the road and on the edge of the north shoulder. This flare was visible to cars coming from Grandview, but all the testimony is to the effect that it could not be seen by cars coming from Sunnyside. Allen then got back into the bus and attempted to drive it out, but with no success. Meanwhile, he saw the lights of an automobile coming from Sunnyside while this automobile was still three-quarters of a mile away. Assuming, however, that the driver of the automobile would see the bus, he did not attempt to signal it, or to put out any other flares. Shortly thereafter the automobile, which was that of respondent, crashed into the front end of the bus.

Respondent Coins had been proceeding in this automobile, a 1933 Dodge, from his home in Mount Vernon to Walla Walla. Before reaching Yakima he had had some drinks of whisky which, according to his testimony, had been given him by two hitchhikers he had picked up along the road. Having, as he asserted, deposited these hitchhikers before leaving Yakima, he picked up a sailor, Kimmel, on the road just outside of Yakima. He asked Kimmel if he could drive a car, and upon being informed by Kimmel that he could, requested him to take the wheel. They changed seats in the car and Coins went to sleep. Kimmel proceeded along the highway, driving at approximately forty or fifty miles per hour. His headlights were on low beam, and in his written report made after the accident, he stated that the dimmer switch on the car would not work, and he could not keep the lights on high beam. When he saw the bus in front of him, he put on his brakes. According to his testimony they took hold, but too late, and he was unable to avoid striking the bus. Kimmel was uninjured, but Coins was taken to the hospital. The bus was subsequently extricated with the aid of a passing truck.

Appellants assign error upon the court's denial of their motion for a directed verdict, made upon the ground that the evidence was insufficient to prove negligence as alleged

in the complaint, and upon the further ground that respondent was shown to be contributorily negligent as a matter of law, and upon the court's denial of their motion for judgment notwithstanding the verdict, or in the alternative for a new trial.

We think that the evidence was amply sufficient to establish negligence on the part of appellant Allen. The language of *Caylor v. B. C. Motor Transp.*, 191 Wash. 365, 71 P. (2d) 162, is here in point.

"Indeed, we think that, but for the position of the stage blocking the highway as it did, the accident would not have occurred; further, that a . . . collision, with its consequences to other users of the highway, was, under the circumstances, sufficiently within the range of probability that the stage-driver, in the exercise of ordinary care, should have foreseen or reasonably anticipated it and governed himself accordingly."

Here, the bus driver had flares in his bus, and in fact actually placed one of them, but this flare could not have been seen by drivers approaching from the direction of Sunnyside. Another bus driver, who arrived on the scene subsequently, stated that he saw the lights of the stalled bus for some distance before he arrived at the accident; nevertheless, he testified as follows:

"A. Immediately when I got there,—as to my immediate actions, what I did with the bus, I don't recall at the moment,—but I asked if anyone had been injured. I was told there was one passenger in the car who had been hurt. *I asked if he had placed any flares as that is one of the major points of the service?*" (Italics ours.)

We think that the driver, having stopped the bus so that it extended well beyond the center line of the highway, where it had no right to be, had the duty to give proper and adequate warning to other motorists who might be using that highway; and that his failure to do so was negligence. *Miller v. Advance Transp. Co.*, 126 F. (2d) 442; *Lashley v. Dawson*, 162 Md. 549, 160 Atl. 738; *Sodden v. Reinhardt*, 5 Wn. (2d) 689, 106 P. (2d) 574.

The appellants contend that the evidence shows that both respondent Coins and his agent Kimmel were guilty

of contributory negligence as a matter of law, and that for this reason the case should have been taken from the jury. They first contend that Coins was negligent in becoming intoxicated and employing a total stranger to operate his automobile without first determining the competency of the stranger. But there was no evidence, other than the fact of the accident itself, to indicate that Kimmel was an incompetent driver. There was, on the other hand, testimony that he had a driver's license and that he had never had another accident than this. In any case, a man is not negligent in permitting an inexperienced or incompetent person to drive his automobile unless he has notice of such person's want of necessary skill. 5 Blashfield, Cyclopedia of Automobile Law and Practice, § 2924, p. 60.

As for the matter of Coins' alleged intoxication, this seems to us irrelevant. Without in the least appearing to condone his continuing his long journey while under the influence of liquor (assuming that he was in this condition), we think that, under the circumstances, it was the more intelligent course of conduct for him to turn the operation of his car over to another who had not been drinking rather than to continue driving it himself. And assuming Coins was not negligent in permitting Kimmel to drive in the first place, we find no negligence in his going to sleep and failing to exercise any further control over the automobile or its operation. Of course, under such circumstances, he remained as fully liable for the consequence of any negligent driving of Kimmel's as he would have been for the consequences of his own negligent driving.

Appellants further contend that Coins was negligent in directing and permitting the automobile to be operated with defective or improperly adjusted equipment, specifically inadequate brakes and lights. Beyond inferences drawn from the fact of the accident, there was no evidence that the brakes were defective, much less any that Coins was aware of any fault in them. As for the lights, two witnesses stated that Kimmel had said, after the accident, that the lights on the car were "poor"; and Kimmel wrote in his report on the accident:

"The dimmer switch on the car I was driving would not work and I could not keep the lights on high beam, so I had them on low beam just before and at the time of the accident."

Coins, however, stated that the lights had worked adequately for him, and that a month before they had been tested and found satisfactory. Whether they were actually defective, and whether or not Coins knew, or should have known, of the defect were clearly fact questions for the jury.

Regardless of the answers to these questions, however, the problem of whether Kimmel's continuing to drive with his lights on low beam constituted contributory negligence on his part remains. The relevant statutory requirement as to headlights is contained in Rem. Rev. Stat., Vol. 7A, § 6360-25 [P.P.C. § 291-23]. It is:

"All head lamps shall be of such nature, and contain such intensity and distribution of light to reveal persons, vehicles and objects within a reasonable distance ahead under all conditions of loading."

In the present case, the witnesses were in agreement that the lights of Coins' car appeared to be, as one of them put it, "normal." Appellant Allen admits he saw them when they were approximately three quarters of a mile away. In view of this testimony, we are unable to say that the lights did not illuminate the highway for a reasonable distance, or that driving with them on low beam constituted contributory negligence as a matter of law. In certain situations, it is conceivable that it might constitute contributory negligence as a matter of fact. In the instant case, the jury appears to have felt that it did not.

Appellants charge that Kimmel was contributorily negligent in several other particulars. Thus, they contend that he was negligent in driving at an excessive or reckless rate of speed, considering all the conditions existing at the point of operation, and at a speed in excess of the maximum speed provided by law for operation at said place; in failing to keep the automobile under control; after seeing the bus, in failing to slacken speed so as to avoid a collision; and generally, in operating the automobile in complete disregard of

the rights and property of others. The charge that Kimmel's speed was in excess of the legal rate is based on Rem. Rev. Stat., Vol. 7A, § 6360-64 (e) [P.P.C. § 296-1], which demands a speed of thirty-five miles an hour for a vehicle traveling on an arterial highway and crossing an intersection when another vehicle is about to enter the highway at the intersection. This statute is by its terms inapplicable to the situation in the case at bar. Whether Kimmel was actually guilty of negligence in the other respects alleged, and whether such negligence, if present, was a proximate cause of the accident, were questions raised but not answered by the testimony. Again, their resolution was for the jury.

Appellants' most serious argument in this connection is that the bus was so large and well-lighted that Kimmel, approaching, as he was, on a straightaway approximately three-quarters of a mile in extent, should have seen it had he been keeping a proper lookout on the highway; and that his failure to see it clearly constituted contributory negligence as a matter of law. The jury could have found from the evidence that the front of the bus was pointed obliquely up the road, so that a car coming from Sunnyside could plainly see the headlights, the marquee lights, and the adjustable spotlight thereon; and that the interior of the bus was illuminated so that the windows showed plainly. On the other hand, it could have been found that the bus was pointed almost at right angles across the road, with the front-end lights shining into the adjoining fields so that only the beams would be visible to a car coming from Sunnyside; that the interior lights were not on, so that, except for the small clearance light, the bus presented a dark mass blocking the whole of the south lane of the highway and two thirds of the north lane; and that, consequently, it was not negligent for Kimmel to have failed to see the bus in time.

In *Morehouse v. Everett*, 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, we said, in a statement which we have often quoted in later cases:

"One driving at night has at least some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; . . . the law imposes the duty on all autos traveling at night to carry a red rear light and the duty on all persons who place obstructions on the road to give warning by red lights or otherwise; . . . a driver at night is looking for a red light to warn him of danger and not for a dark and un-lighted auto or other obstruction in the road. We believe that, generally speaking, where the statutes or the decisions of the courts require red lights as a warning of danger on any object in the highway and such lights are not present, it is a question for the jury to determine whether the driver at night should have seen the obstruction, notwithstanding the absence of red lights."

 While, had we been the trier of fact, we might well have determined that Coins, through his agent, was guilty of such contributory negligence as would bar his recovery, we are not of the opinion that this result is so necessary and so obvious that reasonable minds might not differ as to its correctness. We believe, therefore, that the matter was properly submitted to the jury for its determination.

We come now to the matter of instructions. Instruction No. 16, as given by the court, was as follows:

"You are instructed that under the law of the State of Washington, in force at the time of the alleged accident, the law provided, as follows:

" 'The operator of any vehicle shall stop as required by law at the entrance to any intersection with any arterial public highway, and having stopped shall look out for and give right of way to any vehicles upon such arterial highway simultaneously approaching a given point within the intersection, whether or not such vehicle shall first reach and enter the intersection.' "

 Appellants contend that this instruction was inappli-cable to the situation at hand, as there was no evidence that the bus driver, after turning into Allen road, did not give full consideration to any vehicle which might have been driving on the highway before he backed out on it again. The Coins automobile did not appear on the road until well after the bus had been lodged on the shoulder

thereof. As appellants state in their brief, this case does not involve a contest for an intersection. We concede that this instruction may not have been entirely appropriate. Under the state of the evidence, however, we do not believe that it tended to mislead the jury by suggesting that the bus driver was negligent in a manner for which there is no basis in the testimony. Rather, we think it more likely that its only effect was to leave the jury with the correct impression that travelers along arterial highways have the right to suppose that vehicles which might cross at the intersections will look out for and yield the right of way to them. As one of the issues in the case was whether the driver of the Coins car was keeping a reasonable lookout, we cannot say that the giving of this instruction amounted to reversible error.

Appellants further contend that the court erred in giving its instruction No. 10. The instruction, as given by the court, is not quoted in full in appellants' brief, as required by Rule 16 (5) of this court, 18 Wn. (2d) 18-a, and therefore the alleged error cannot be considered. *State v. Knabb,* 199 Wash. 53, 90 P. (2d) 250; *Simmons v. Kalin,* 10 Wn. (2d) 409, 116 P. (2d) 840; *Gephart v. Stout,* 11 Wn. (2d) 184, 118 P. (2d) 801.

Appellants assign error on the refusal of the court to give three of their requested instructions. The matter contained in their requested instruction No. B, dealing with the claimed contributory negligence of Coins in turning over an allegedly defective car to Kimmel, appears to have been more thoroughly covered than the evidence required in the actual instructions given by the court; while as for their requested instruction No. C, relating to lookout, we believe that the court's instructions Nos. 25 and 27, dealing with the same subject, were more appropriate than it would have been.

Appellants' requested instruction No. A dealt with the subject of last clear chance. In their brief, they state:

"Appellants cross-complained for damages to the motor bus. They, therefore, were entitled, we believe, to an instruction on both phases of the last clear chance doctrine, . . ."

From the wording of the requested instruction itself, however, as well as from certain statements in appellants' reply brief, it is difficult to determine whether this instruction was invoked by appellants in their capacity as defendants, or as the above quotation suggests, by the Washington Motor Coach Company alone in its capacity as (sole) cross-complainant. We will assume the latter. For purposes of the following discussion, therefore, the Washington Motor Coach Company must be considered as plaintiff and Coins as defendant.

■ The last clear chance rule, as applied in Washington, has two phases. In the one, the plaintiff's negligence may continue up to the time of the injury, if the defendant actually sees the peril; in the second, the plaintiff's negligence must have terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself, if the defendant did not actually see the peril, but by the exercise of reasonable care should have seen it. *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302; *Everest v. Riecken,* 30 Wn. (2d) 683, 193 P. (2d) 353. The requested instruction included both phases and the trial court, after some consideration, refused to give it.

We think that the court was correct in its decision. In order for the first phase of the rule to apply, there must be evidence that the defendant *actually saw* the peril in time to have avoided it. Here, there is no evidence to contradict Kimmel's assertion that, as soon as he saw the bus, he did what a reasonable man would have done to avoid running into it; put on the brakes, though to no avail. Even if Kimmel ought to have seen the bus before this time, that fact is not sufficient in itself to raise an inference that he did see it. *Thompson v. Porter*, 21 Wn. (2d) 449, 151 P. (2d) 433. For this reason, we do not think that the situation called for an instruction on the first phase of the rule.

In order to bring a case within the second phase of the rule, it does not matter whether or not the defendant actually saw the peril so long as he should have seen it; but, in such a situation, the plaintiff's negligence must either

have terminated or culminated in a situation of peril from which he could not, with reasonable care, have extricated himself. In the present case, the bus driver's negligence in failing to warn approaching automobiles of the peril had clearly not terminated, but continued up to the moment of impact; and while it is true he could not have extricated his bus from the ditch before the approaching Coins car had reached it, it is probable that he could have averted the accident by taking proper precautions which it was well within his power to do. In such a situation, Kimmel having been unconscious of the peril, we are not of the opinion that the second phase of the rule was applicable.

The judgment is affirmed.

MALLERY, SCHWELLENBACH, and HILL, JJ., concur.

SIMPSON, J., concurs in the result.

