[No. 31314. Department Two. January 4, 1951.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE H. MEYER *et al., Appellants.*[1]

[1]Reported in 226 P. (2d) 204.

*Bannon, Soule & Krilich* and *Copeland & Tollefson,* for appellants.

*Patrick M. Steele, The Attorney General, Ronald Moore* and *Barbara Ohnick, Assistants,* for respondent.

GRADY, J.—Nine of the appellants were found guilty by a jury of the crime of rape, and one of attempted rape. They have taken an appeal from the judgment and sentence of the court.

The statute upon which the information was based is Rem. Rev. Stat., § 2435 [P.P.C. § 118-181]. It provides that every person who shall perpetrate an act of sexual intercourse with a female of the age of ten years or upwards not his wife, when, through idiocy, imbecility, or any unsoundness of mind, either temporary or permanent, she is incapable of giving consent, commits the crime of rape.

Appellants present to this court for review the following questions: (a) whether respondent produced sufficient evidence of the *corpus delicti* to make their confessions of the commission of the crime charged admissible in evidence; (b) whether the evidence met the test of mental unsoundness contemplated by the statute; (c) whether the court erred in giving or refusing to give instructions on the question of mental unsoundness; (d) whether it was necessary that proof be made that appellants had knowledge of the mental unsoundness of the person against whom the offense was committed; (e) whether the court erred in the admission of evidence and in its refusal to strike evidence given; (f) whether the court should have permitted appellants to make a collateral attack upon their confessions in the absence of the jury; (g) whether the evidence established an attempted rape by one of appellants; (h) whether the court erred in the giving and refusal to give certain instructions.

■ (a) In order to establish the *corpus delicti* of any crime, there must be shown to have existed, a certain act or result forming the basis of the criminal charge and the existence of a criminal agency as the cause of such act or result. When these factors are determined, the next inquiry is with reference to the person who committed the criminal act. *State v. Gates,* 28 Wash. 689, 69 Pac. 385; *State v. Richardson,* 197 Wash. 157, 84 P. (2d) 699; *State v. Gregory,* 25 Wn. (2d) 773, 171 P. (2d) 1021. In the *Gregory* case, there is a statement to the effect that it is also necessary for the state to establish the identity of the one who committed the crime. There is authority to this effect, but it has not been followed by this court. The statement was criticized in 22 Wash. L. Rev. 90.

■■ The identity of the person who has committed the crime is not material when the *corpus delicti* is being proven. 23 C. J. S. 181, Criminal Law, § 916. But, in order to sustain a conviction of the crime charged, the identity of the accused must be established. Proof that a male person had sexual intercourse with the female, she not being his wife, and that at the time she was incapable of giving her consent thereto because of unsoundness of mind, would establish the *corpus delicti* of the crime of rape as charged in the information.

■ The confession of a person charged with the commission of a crime is not sufficient to establish the *corpus delicti,* but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession. *State v. Scott,* 86 Wash. 296, 150 Pac. 423, L. R. A. 1916B, 844; *State v. Gray,* 98 Wash. 279, 167 Pac. 951; *State v. Bestolas,* 155 Wash. 212, 283 Pac. 687; *State v. Marcy,* 189 Wash. 620, 66 P. (2d) 846; *State v. Thomas,* 1 Wn. (2d) 298, 95 P. (2d) 1036; *State v. Van Brunt,* 22 Wn. (2d) 103, 154 P. (2d) 606; *State v. Moore,* 35 Wn. (2d) 106, 211 P. (2d) 172.

The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof.

It is sufficient if it *prima facie* establishes the *corpus delicti*. *State v. Traufer*, 109 Mont. 275, 97 P. (2d) 336; *People v. Harshaw*, 71 Cal. App. (2d) 146, 161 P. (2d) 978; *People v. Day*, 71 Cal. App. (2d) 1, 161 P. (2d) 803; *People v. Sparks*, 82 Cal. App. (2d) 145, 185 P. (2d) 652; *People v. Dubinsky*, 31 N. Y. S. (2d) 234; *Messel v. State*, 176 Ind. 214, 95 N. E. 565.

Ordinarily, when an appellate court is called upon to determine whether the trial court erred in ruling that sufficient independent evidence had been produced in order that a confession might then be resorted to for the purpose of fully establishing the *corpus delicti*, such evidence is set forth and reviewed in the opinion. However, we have chosen to refrain from a portrayal of the evidence of this sordid affair, and content ourselves with the statement that the whole record has been carefully perused and that we emerge from such perusal convinced that substantial evidence was submitted that several of a group of male persons had sexual intercourse with the female involved, and that her mental condition was such that in the eyes of the law she was incapable of giving the consent which would relieve them of guilt of the crime of rape. With this evidence as a background, the confessions were properly received to corroborate the showing made that the crime of rape had been committed, and to identify the perpetrators thereof. The confessions identified the appellants as those who had committed the offense charged.

(b) and (c) These questions are presented from two standpoints: one, that the evidence submitted by respondent is insufficient to support a finding by the jury that the female involved was suffering from such unsoundness of mind at the time of her ravishment as to be incapable of giving her consent to the acts of sexual intercourse; and the other, that the instructions given by the court on the subject set forth an improper test, also that it was error not to give the instructions on the subject proposed by appellants.

The instructions given and those proposed are not set out in full in the brief of appellants as required by

Rule 16 (5) of the rules of this court [amended and now appearing as Rule of Supreme Court 42(1)(f), 34A Wn. (2d) 45]. That rule, so far as is applicable, is·as follows:

" . . . Whenever error is assigned upon a ruling or decision on the inclusion, omission, sufficiency, or insufficiency of an instruction or instructions, given or not given, such instruction or instructions, as the case may be, shall be set out in the brief in full."

Ever since the adoption of this rule we have held that noncompliance with it prevents consideration of an assigned error based upon the giving or refusal to give instructions to the jury. *State v. Hussey,* 188 Wash. 454, 62 P. (2d) 1350; *State v. Knabb,* 199 Wash. 53, 90 P. (2d) 250; *State v. Snyder,* 199 Wash. 298, 91 P. (2d) 570; *DeLonge v. Richfield Oil Corp.,* 35 Wn. (2d) 803, 215 P. (2d) 701.

■ Considering the question from a factual standpoint, it appears from the record that the female had been an inmate of the Western State Hospital, and later was under the care of a psychiatrist. She had been taking a series of electric shock treatments for a time immediately preceding the night of her contacts with appellants. Her mental history and her course of conduct over the past several years, particularly on the night in question, coupled with the evidence and opinion of experts, made the question of whether she was suffering from such unsoundness of mind as to be unable to consent to having sexual intercourse with appellants one for the jury to determine.

We have considered the respective contentions of counsel with reference to the proper tests to be applied to this question. Not being able to consider the instructions given and proposed, we are not called upon to formulate any test of general application; but regardless of such instructions, the information given to the jury by experts, and by one who had the female under his observation at the Western State Hospital, was of such a character as to enable the jurors to conclude that she did not comprehend what appellants desired to do to her or what they did in accomplishing their purpose. The jurors, as people of ordinary intelligence, would understand that while she

may have offered no resistance, or even encouraged the advances of appellants, she nevertheless did not consent because of her legal incapacity so to do.

■ (d) It was not necessary that respondent prove that appellants knew that the female was of such unsoundness of mind as to be incapable of consenting to the acts of sexual intercourse. There are certain types of statutory crimes in the commission of which the perpetrator acts at his peril. If knowledge is not made a prerequisite by the statute defining the crime, its absence is not a defense, nor is it an element to be proved by the state. The part of the statute pursuant to which the appellants were prosecuted does not make any reference to knowledge of mental condition. It has been decided under similar statutes that knowledge is not an element of the offense. *State v. Dombroski,* 145 Minn. 278, 176 N. W. 985; *People v. Griffin,* 117 Cal. 583, 49 Pac. 711, 59 Am. St. 216; *State v. Prokosch,* 152 Minn. 86, 187 N. W. 971; 44 Am. Jur. 908, Rape, § 11.

(e) A short time after the commission of the offenses, the female was found in an apartment house and had some conversations with parties there. She also conversed with police officers after being taken to the police station. It appears from the testimony that she made statements to the effect that a number of boys took her out and had fun with her, and that they threw her clothes away. She stated to the police matron that she had been raped, and asked one of the officers if he knew Eric, this being the given name of one of appellants. The court ruled the evidence was relevant upon the question of the state of mind of the female. The jurors were informed of the limited purpose for which the evidence was being admitted.

■ The appellants recognize the rule that, although such evidence may be hearsay, when state of mind is in issue, the court may, in its discretion, admit the evidence for what bearing it may have on that subject. However, it is their contention that the discretion was abused, because the character of the evidence was such that the jurors were likely to consider it as proof of the crime charged in spite

of the admonitions of the court as to its other and limited purpose.

Our attention is called to what was said in this respect in *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300. There is danger in jury trials, when evidence is admitted that may be proper for one purpose but improper for other purposes, but that is not necessarily a reason why it should be excluded. The trial court must exercise its discretion, and an appellate court will not hold reversible error has been committed unless it can be said that the danger of withdrawing that protection the law accords to a defendant on trial by the introduction into the trial of a confusing element is great as compared with the advantage given to the prosecution by the admission of the evidence. This is the theory of the *Goebel* case.

Applying its doctrine to the situation now being considered, it appears to us that the mental state of the female was such a vital issue that the court properly concluded that the evidence should be admitted upon the jury being instructed with reference to the limited purpose for which it could be considered.

A few days after the statements referred to were made, the female was taken to the Western State Hospital, where she had previously been a patient. In its regular course of business, the hospital keeps a clinical record of each patient. About ten days after she was received at the hospital, one of the staff physicians interviewed the patient by a series of questions and answers. A part of the interview was recorded upon a soundscriber, and thereafter transcribed by a typist. That part of the interview was read to the jury. The doctor stated with reference to it: "Generally, I think it is correct." It was received in evidence for what bearing it had on the mental state of the female.

The court instructed the jury on the limited purpose for which it could be considered. The appellants objected to the typewritten document being read to the jury and to its being made an exhibit in the case on the ground it was not properly identified in that neither the record itself was reproduced, nor was the typist who transcribed it called to

identify the typed statement as a correct transcription of the record. The further objection was made that, even though the statements of the female might be probative of her state of mind, there were such references therein as to the commission of the offense charged and to appellants that no instructions the court might give could prevent the jury from considering them for purposes not proper. The typewritten statement was identified by one of the other hospital physicians as a part of the clinical record of the patient. He stated it was the custom to have personal interviews with the patients by a member of the official staff. The physician who conducted the interview identified it as a part of the hospital record, though he stated he had not compared it with the soundscriber.

Rem. Supp. 1947, § 1263-2, provides:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the Court, the sources of information, method and time of preparation were such as to justify its admission."

It will be noted the statute prescribes certain requirements and vests in the court a discretion with reference to the admissibility of a business record. *Choate v. Robertson*, 31 Wn. (2d) 118, 195 P. (2d) 630.

We are of the opinion that the requirements of the statute were met and the court properly permitted the typewritten transcription in evidence so far as it portrayed the state of mind of the patient. We recognize the seriousness of the question raised with reference to those parts of the interview which made reference to the commission of the offense and to appellants. The court should have required respondent to segregate those parts of the interview and should not have permitted their introduction in evidence. We do not think, however, that the error was prejudicial to such an extent that a new trial should be ordered. Substantially all of the statements of the patient about the

events of the night in question had been given to the jury by the direct and circumstantial evidence and the confessions of appellants. The evidence was not submitted as a part of respondent's case, but was a part of the cross-examination of one of the hospital staff called as a witness by appellants.

Error is assigned upon the refusal of the court to strike testimony of two witnesses because it was not connected in any way with appellants. The evidence was circumstantial and related to the events surrounding the offense charged. Its probative value and weight were for the jury to determine.

The appellants also complain of the reception in evidence of a notation made by the head nurse in a department of the Pierce County Hospital on what was termed a "valuables slip." This is a record of any money or jewelry a patient may have when entering the hospital. It is customary to have the patient sign the slip. The witness stated the patient had no valuables. Counsel read from the slip "signature of the patient, pt. unable to sign." The witness stated the handwriting quoted was hers. There had been some question raised about the signature of the patient. She had signed two hospital slips, one a permit for care, and the other a patient's clothes list. The slip would be relevant only with reference to probable mental condition. The notation was a part of the hospital record and had a bearing on the mental state of the patient.

(f) The respondent called a police officer as a witness and interrogated him relative to verbal admissions made by appellants with reference to the commission of the offense charged, and the signed confessions made by them were identified. The witness stated that the confessions were made freely and voluntarily and without any inducements; also that appellants were not subjected to any threats or promises in order to obtain the admissions and confessions. The court permitted counsel for appellants to interrogate the witness as to whether they were told if they signed the confessions they could be out of jail within a

few days, otherwise they would be there for several months. The witness gave negative answers. Counsel then informed the court that they desired to make a collateral attack on the confessions made by appellants out of the presence of the jury. In the discussion that followed, the trial judge made reference to a conference had in chambers.

The record is not clear as to the nature of the attack desired to be made, but we infer that it would have been based upon the ground that the confessions were induced by fear produced by threats. The court ruled that such evidence must be submitted to both the court and jury and that the questions whether the confessions were made under inducement or under the influence of fear produced by threats were for the jury to determine the same as any other fact in the case. Rem. Rev. Stat., § 2151 [P.P.C. § 127-5], reads as follows:

"The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony."

The appellants argue that, under this statute, if a confession is made under the influence of fear produced by threats, it must not go before the jury, and whether such is the fact must be determined by the court. Authority in support of the position of appellants is found in 3 Wigmore on Evidence (3d ed.), 342, § 860 and following sections. The author cites a number of cases in support of his text.

We have decided that it is for the jury to determine whether a confession was obtained under the influence of fear produced by threats. *State v. Barker*, 56 Wash. 510, 106 Pac. 133; *State v. Wilson*, 68 Wash. 464, 123 Pac. 795; *State v. Kelch*, 95 Wash. 277, 163 Pac. 757; *State v. Van Brunt*, 22 Wn. (2d) 103, 154 Pac. 606. We pointed out in the *Barker* case that if it should appear to the court that a confession was made under the influence of fear produced by threats, it was its duty to exclude the evidence, and that it was proper for the court to hear the evidence relating

to duress and decide upon the admissibility of such evidence. We held that there was nothing in the statute requiring such evidence to be taken without the presence of the jury and that there need not be two examinations of the witnesses, one before the court and the other with the jury present. A situation may arise in the trial of a case where the court might, in its discretion, make some inquiry in the absence of the jury with reference to how a confession was obtained, but the theory of our decisions is that the court is not required by the statute to do so.

(g) In his statements made as to the part taken by him, appellant Harry K. Christel denied having sexual intercourse with the female. The respondent reduced the charge to attempted rape. He was convicted of that offense. His contention is that the evidence, including his confession, does not establish an attempt, but at most a mere preparation. Rem. Rev. Stat., § 2264 [P.P.C. § 112-21], defines an attempt as follows:

"An act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime."

This appellant was in an automobile with the female on two occasions under the same circumstances as surrounded the other appellants. His conduct indicated he intended to have sexual intercourse with her. On one occasion the announcement of the coming of police officers deterred his advancements, which had not become an attempt. On the second occasion by reason of some present physiological condition he was unable to perform the act. There is evidence that the female rendered some artificial preparatory assistance, but the male organ did not respond.

The record does not show that there was any overt act done towards the penetration of the female organs, nor can it be inferred such was the case. We are of the opinion there was no attempt shown. All of the acts done were in preparation of that which appellant intended to do. He never reached the attempt stage. Our discussion in the case of *State v. Ficklin*, 190 Wash. 168, 67 P. (2d) 897, and *State*

*v. Bigger,* 34 Wn. (2d) 69, 208 P. (2d) 102, bears out the conclusion we have reached. The case against appellant should have been dismissed.

(h) What we have said under subdivision (c) applies to the other instructions referred to by appellants. We cannot consider them because of noncompliance with our rules.

■ Our study of the record convinces us that appellants had a fair and impartial trial, and, with the exception noted, the evidence taken as a whole was sufficient to justify the jury in finding each of them guilty of the crime with which he was charged.

The judgment against the appellants Lawrence H. Meyer, Jack D. Kerth, Donald W. Greco, Eric Liljas, Anders Liljas, Arthur N. Markstone, Jr., Robert C. O'Larey, Eugene Wick and Ronald W. Phipps is affirmed.

The judgment against appellant Harry K. Christel is reversed, and the case as to him remanded for the entry of an order of dismissal.

ROBINSON, MALLERY, HILL, and SCHWELLENBACH, JJ., concur.

---

February 10, 1951. Petition for rehearing denied.