200 P.3d 752 (2009)
STATE of Washington, Respondent,
v.
Ricardo L. ANGULO, Appellant.
No. 26492-1-III.
Court of Appeals of Washington, Division 3.
February 10, 2009.
*753 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
John G. Prentiss, Adams County Prosecutor's Office, Ritzville, WA, for Respondent.

OPINION PUBLISHED IN PART
KORSMO, J.
¶ 1 Ricardo Lopez Angulo was convicted of two counts of first degree child rape after his confession to the offenses was related to the jury. The child victim, however, did not describe any acts of sexual intercourse during her testimony, but only described behavior that would constitute molestation or attempted rape. The primary argument Mr. Lopez Angulo presents is a claim that his attorney erred in not raising a corpus delicti challenge to the admission of his confession. He argues that the corpus delicti rule should have excluded his confession because there was no independent proof of penetration, the *754 distinguishing feature between molestation and rape. Believing that he construes the corpus delicti requirement too broadly and that it would not serve the purpose of the rule to exclude the confession, we affirm.

BACKGROUND
¶ 2 Mr. Lopez Angulo was charged with two counts of first degree child rape involving S.S. (born October 9, 1996). Prior to trial, the court conducted an ER 404(b) hearing to determine the admissibility of other misconduct evidence. The trial court ruled that evidence concerning prior sexual misconduct with S.'s sister, C.M., was admissible as a common scheme or plan.
¶ 3 At trial, S. testified that she lived with Deloris Hinojosa, her grandmother, and Mr. Lopez Angulo. On at least two occasions during the summer of 2006, Mr. Lopez Angulo touched her in places she did not want to be touched. These events occurred on two different evenings after Ms. Hinojosa had left for work.
¶ 4 On the first occasion S. was asleep in her bed. She woke up to Mr. Lopez Angulo touching her both inside and outside of her pajamas. S. described the second incident as one involving Mr. Lopez Angulo "humping" or moving his hips up and down. He was not wearing any clothing and his private parts were "like a stick." They touched her privates.
¶ 5 Detective Dale Wagner of the Adams County Sheriff's Office testified concerning what S. had told him. She did not describe any penetration during her pre-trial interviews. Detective Wagner testified that Mr. Lopez Angulo admitted touching S. The detective testified that on the first occasion, his finger was "in her crack" approximately one-quarter inch and on the second occasion, his erect penis entered S.'s vagina once or twice, approximately one-quarter inch.
¶ 6 Prior to C.'s testimony, the trial court instructed the jury that her testimony was for the limited purpose of showing a common scheme or plan and not to show propensity. C. is S.'s older sister and had lived with Ms. Hinojosa and Mr. Lopez Angulo. C. described an incident in May 2002, when she fell asleep in her bed fully clothed and woke up to find Mr. Lopez Angulo in bed beside her. Her blouse was now open. Mr. Lopez Angulo was feeling her breast and trying to undo her belt. He put his tongue in her mouth.
¶ 7 Ms. Hinojosa testified that she moved Mr. Lopez Angulo out of her home in October 2006 because he kept leaving S. at home alone while she was at work. A week or two later, S. reported the abuse to Ms. Hinojosa. Ms. Hinojosa made a report to police in February or March 2007. Ms. Hinojosa knew of the allegations C. had made against Mr. Lopez Angulo in 2002, but she did not believe C.
¶ 8 A clinical examination showed no physical signs of penetration. Given S.'s physical maturity, however, that would not be unusual.
¶ 9 Mr. Lopez Angulo denied the allegations made by S. and C. He stated that the allegations were fabricated in retaliation for his relationship with another woman, which caused Ms. Hinojosa to kick him out. He testified that, because English was not his first language, he was not completely fluent, and Detective Wagner bullied him into confessing. In rebuttal, Detective Wagner denied bullying Mr. Lopez Angulo. The detective testified that Mr. Lopez Angulo did not complain of a language barrier in his interview and that he was able to listen and respond fluently in English.
¶ 10 The jury found Mr. Lopez Angulo guilty of both counts. He appealed to this court, claiming that his attorney erred in not presenting a corpus delicti challenge, the trial court erred in admitting evidence that he abused the other child, and that the prosecutor erred in closing argument. We discuss the first claim in the published portion of this opinion and the other claims in the unpublished portion.

ANALYSIS

Corpus Delicti
¶ 11 Appellant contends that his confession was wrongly admitted into evidence due to his counsel's error because there was no *755 independent proof of penetration, the element distinguishing rape from molestation, so the charged offense was never established. There is conflicting case law on both sides of that question. He argues that without independent proof of each element of the charged crime, no confession can ever be admitted into evidence. We believe his argument is inconsistent with the history of the corpus delicti rule in this state and also is contrary to the purpose of the rule.
¶ 12 The standards of review of a claim of ineffective assistance of counsel are well understood. The Sixth Amendment guarantees the right to counsel. More than the mere presence of an attorney is required. The attorney must perform to the standards of the profession. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. State v. McFarland, 127 Wash.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. Strickland v. Washington, 466 U.S. 668, 689-691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. Id. at 690-692, 104 S.Ct. 2052.
¶ 13 History. The term corpus delicti has at least two distinct meanings in Washington law. The first use of the term dates to territorial times. Timmerman v. Territory, 3 Wash.Terr. 445, 17 P. 624 (1888). There the court made reference, in a review of the sufficiency of the evidence in a criminal case, to the government's burden of proving the corpus delicti beyond a reasonable doubt. Id. at 450, 17 P. 624. Several cases in the early years of statehood similarly used the term in describing whether or not the State had met its ultimate burden of proving a case beyond a reasonable doubt. E.g., State v. Pienick, 46 Wash. 522, 90 P. 645 (1907); State v. Gates, 28 Wash. 689, 69 P. 385 (1902).
¶ 14 The phrase is also used in the related manner of referring to whether or not there is sufficient evidence to admit a confession into evidence. The first consideration of this evidentiary rule occurred in State v. Marselle, 43 Wash. 273, 86 P. 586 (1906). There the defendant had confessed to the crime of unlawful carnal knowledge of a child under the age of 18. The young woman testified at trial that there had been no sexual contact with the defendant and that she had lied to police earlier. Nonetheless, the trial court admitted statements made by the defendant to two police officers that there had been unlawful carnal knowledge. The jury returned a verdict on the lesser included offense of assault with intent to commit rape. Id. at 275-276, 86 P. 586.
¶ 15 The Supreme Court reversed, finding prejudicial error in the admission of the defendant's statements where the complaining witness denied that any crime at all had taken place. "A confession not corroborated by independent evidence of the corpus delicti is not sufficient to support a conviction of crime." Id. at 276, 86 P. 586. Since the victim denied that any rape had taken place, and there was no other evidence to establish a criminal act had occurred, the admission of the defendant's statement was error and the conviction was reversed. Id. The court remanded the case for a new trial on the included offense. Id. at 277, 86 P. 586.
¶ 16 The contours of the evidentiary corpus delicti confession rule were clarified in State v. Meyer, 37 Wash.2d 759, 226 P.2d 204 (1951). There the court declared that before a confession or admission could be admitted into evidence, the prosecution must first present a prima facie case establishing the corpus delicti of the crime. Id. at 763-764, 226 P.2d 204. The corpus delicti of a case consisted of establishing the existence of "a certain act or result forming the basis of the criminal charge and the existence of a criminal agency as the cause of such act or result." Id. at 763, 226 P.2d 204. The identity of the criminal actor, although a fact that had to be proven at trial, was not an element of the corpus delicti. Id.
¶ 17 The evidentiary corpus delicti confession rule was further refined in State v. Lung, 70 Wash.2d 365, 423 P.2d 72 (1967). Lung had involved a second degree murder *756 prosecution where the victim's body had never been discovered. The victim's estranged husband claimed to have accidentally shot the victim when a loaded rifle in his closet discharged when he went to the closet for his jacket. The victim was standing by the telephone and was killed by the single shot. Panicking, he put her body in his truck, and then drove to the river and threw her body in it. Id. at 367, 423 P.2d 72. After disposing of the body, he returned the gun to his business where he normally kept it. Police later discovered it there, with a live round in the chamber. He put the victim's coat, purse, and shoes back in her car. Id. at 368, 423 P.2d 72.
¶ 18 The husband's statements were admitted against him at trial. Other evidence corroborated portions of the statements. An expert testified that the hole in the victim's coat was made by the defendant's rifle. Id. Blood found in his house confirmed the location where the victim was standing when she was shot. Her watch and ring were on the window sill where the defendant said she had placed them before the shooting. Id. at 368-369, 423 P.2d 72. An officer on patrol testified to seeing the defendant's truck on the road to the location on the river where he said he dumped the body. Id. at 369, 423 P.2d 72.
¶ 19 A significant issue on appeal was whether the trial court erred in admitting the defendant's statement since, without the body, there was no way of proving the fact of death. Id. at 371, 423 P.2d 72. The court identified two elements as constituting the corpus delicti in a homicide case: "(1) the fact of death and (2) a causal connection between the death and a criminal agency, but the corpus delicti does not require proof of a causal relation between the death and the accused." Id. The court concluded that circumstantial evidence that the victim was dead was sufficient to establish the "fact of death" component of the homicide corpus delicti. It noted that to do otherwise would be to reward defendants who successfully concealed a murder victim's body, and would also leave unpunished "an infinite number of crimes involving the elements of a specific intent." Id.
¶ 20 The court concluded that the circumstantial evidence was consistent with a criminal act having taken place and inconsistent with a hypothesis of innocence.[1]Id. at 372, 423 P.2d 72. The evidence pointed at the defendant and corroborated his statements. "The corpus delicti was completely established." Id. at 373, 423 P.2d 72.
¶ 21 Another significant case dealing with the corpus delicti confession rule is State v. Aten, 130 Wash.2d 640, 927 P.2d 210 (1996). There the defendant had been convicted of second degree manslaughter after an infant left in her care suddenly died. The cause of death was attributed to Sudden Infant Death Syndrome (SIDS), a form of acute respiratory failure. Id. at 644, 646, 659, 927 P.2d 210. Neither natural death nor manual strangulation could be ruled out as a cause of death. Id. at 646, 927 P.2d 210. The defendant had made various admissions, which were presented to the jury, that she had suffocated the victim. Id. at 649, 652-654, 927 P.2d 210.
¶ 22 A divided Court of Appeals panel had reversed the conviction, ruling that the statements should not have been admitted under the corpus delicti rule. Id. at 655, 927 P.2d 210. The Washington Supreme Court affirmed, agreeing that the rule had not been satisfied. In particular, the court ruled that the evidence did not show the death was caused by a criminal act. Id. at 658, 927 P.2d 210. In its analysis, the court repeatedly pointed out that the cause of death, SIDS, did not point to a criminal act. Id. at 659, 661-662, 927 P.2d 210. Merely because a criminal act could not be ruled out under the SIDS diagnosis did not mean that a criminal agency had been proven. The fact that the evidence equally permitted finding both a criminal and a non-criminal cause of death *757 meant that the criminal agency requirement was not proven. Id. at 659-660, 927 P.2d 210. Citing to Lung, the court stated that circumstantial evidence supporting a corpus delicti finding must be consistent with guilt and not with innocence. Id. at 660-661, 927 P.2d 210.
¶ 23 The court recently returned to the scope of the evidentiary corpus delicti rule again in State v. Brockob, 159 Wash.2d 311, 150 P.3d 59 (2006). Brockob involved three consolidated cases including one conviction for possession of ephedrine with intent to manufacture, one conviction for attempted manufacture of methamphetamine, and a conviction for attempted second degree robbery. Id. at 319-320, 323, 326, 150 P.3d 59. One of the drug case defendants had possessed 30 bottles of pseudoephedrine; the other possessed only three bottles of ephedrine, but also had coffee filters often used in the manufacturing process. Both defendants had confessed that they possessed the drug with the intent that methamphetamine be manufactured. Id. at 318-319, 321, 150 P.3d 59.
¶ 24 The court reversed the conviction in the case of the defendant with the 30 bottles, but upheld the conviction of the man having three bottles plus the coffee filters. Id. at 333, 150 P.3d 59. In its analysis, the majority read Aten as increasing the burden imposed by the evidentiary corpus delicti rule. Citing to the Aten lead opinion's discussion of the Lung multiple-hypothesis standard for circumstantial evidence, the Brockob majority stated that evidence is insufficient to admit an incriminating statement if the evidence is consistent with both guilt and innocence. Id. at 330, 150 P.3d 59. The court stressed that the corroboration evidence must establish the charged crime rather than just any crime. Id. at 329, 150 P.3d 59.
¶ 25 With respect to the first case, the mere possession of the pseudoephedrine without more did not support an inference of intent to manufacture. Absent some evidence of manufacture, the corpus delicti of the charged offense could not be established and the defendant's statement concerning his intent should not have been admitted. The evidence only showed that the defendant stole pseudoephedrinenot what he was going to do with it. Id. at 331-332, 150 P.3d 59. In the other drug case, the evidence of coffee filters, used in the manufacturing process, was sufficient additional corroboration to show the intent behind the possession of the ephedrine. Accordingly, the evidence was sufficient to admit the defendant's incriminating statements. Id. at 333, 150 P.3d 59.
¶ 26 This case history establishes several points with respect to the Washington evidentiary corpus delicti rule. The rule requires proof of both a criminal act and a criminal agency or cause for the act. Meyer, 37 Wash.2d at 763, 226 P.2d 204. It is the State's burden to establish these requirements on a prima facie basis. Id. at 763-764, 226 P.2d 204. However, prima facie in this context appears to mean that the evidence must preponderate in favor of the existence of a criminal act or agency. If the evidence could equally point to both a criminal or non-criminal cause, then the State has not met its burden of establishing the corpus delicti. Aten, 130 Wash.2d at 660, 927 P.2d 210; Brockob, 159 Wash.2d at 329, 150 P.3d 59. Evidence corroborating an incriminating statement must relate to the crime charged; evidence of some other tangentially-related crime is not sufficient. Brockob, 159 Wash.2d at 329, 150 P.3d 59. The corroboration does not require proof of all elements of the charged offense. Lung, 70 Wash.2d at 371, 423 P.2d 72; Meyer, 37 Wash.2d at 763, 226 P.2d 204.
¶ 27 Purpose. The evidentiary corpus delicti rule arose out of judicial distrust of confessions and incriminating statements. Aten, 130 Wash.2d at 656-657, 927 P.2d 210. Courts feared that confessions would be uncritically accepted by juries, even if there was evidence that the admissions were involuntary, coerced, or untruthful. Id.; City of Bremerton v. Corbett, 106 Wash.2d 569, 576, 723 P.2d 1135 (1986).
The requirement of independent proof of the corpus delicti before a confession is admissible was influenced somewhat by those widely reported cases in which the "victim" returned alive after his supposed murderer had been tried and convicted, *758 and in some instances executed. See, e.g., Perrys' Case, 14 Howell's State Trials 1311 (1660); Trial of Stephen and Jesse Boorn, 6 American State Trials 73 (1819). See generally State v. Howard, 102 Or. 431, 203 P. 311 (1921); Note, 103 U. Pa. L.Rev. at 646-47.
Corbett, 106 Wash.2d at 576, 723 P.2d 1135.
¶ 28 Concern over the trustworthiness of the defendant's admissions appears to have been a factor in Aten, although it is not a stated reason for the result. The court noted that the incriminating statements were made after the defendant had entered into mental health treatment and was taking medications for her condition. 130 Wash.2d at 645-650, 653-654, 927 P.2d 210. The court's analysis also indicated that one reason a suspect's statements could not be considered in establishing the corpus delicti was concern that one false statement would corroborate another untruthful statement. Id. at 657-658, 927 P.2d 210.
¶ 29 Thus, the purpose of the corpus delicti rule is to safeguard against jury consideration of incriminating statements that are false.
¶ 30 Application. With these considerations of history and purpose in mind, we now turn to the application of the rule to this case. There are at least three cases with similar factual patterns as this case.
¶ 31 State v. Mathis, 73 Wash.App. 341, 869 P.2d 106, review denied, 124 Wash.2d 1018, 881 P.2d 254 (1994), involved a third degree child rape prosecution based on the defendant's admitted digital penetration of the victim. Id. at 342, 869 P.2d 106. The victim denied that any penetration had occurred, but did indicate that the defendant had placed his hand in her underpants and allowed her to sleep overnight at the house. The defendant testified that he had made the statements attributed to him by the police. The court concluded this was sufficient corroboration to permit consideration of the defendant's statement to the police. Id. at 346-347, 869 P.2d 106.
¶ 32 State v. Biles, 73 Wash.App. 281, 871 P.2d 159, review denied, 124 Wash.2d 1011, 879 P.2d 293 (1994), was a first degree child rape prosecution involving an admission by the defendant that he had "barely" penetrated his daughter when she was three or four years old. Id. at 282-283, 871 P.2d 159. She said that her father's private part was "hard" and had touched her private parts, but answered "no" when asked if the defendant's private parts had entered her private parts. Id. at 283, 871 P.2d 159. After the incident, his private part was "wet." Id. at 282, 871 P.2d 159. The child also indicated that the incident "hurt." Id. at 285, 871 P.2d 159. This court concluded that the daughter's evidence was sufficient to corroborate the admission. Id.
¶ 33 State v. C.D.W., 76 Wash.App. 761, 887 P.2d 911 (1995), involved a juvenile court prosecution for one count of first degree child rape. The victim, age nine, testified to several incidents of sexual contact, but did not describe an act of rape. The defendant admitted acts of intercourse to a detective. Id. at 762, 887 P.2d 911. There was no objection raised at trial to the detective's testimony. On appeal, the defendant claimed that the corpus delicti rule was violated and that defense counsel had been ineffective in not seeking to exclude the confession. Id. The prosecution conceded that there was insufficient evidence of sexual intercourse to satisfy the corpus delicti rule. Id. The court concluded that as a rule of evidence, a corpus delicti challenge could not be raised initially on appeal. Id. at 763-764, 887 P.2d 911. The court also concluded, in light of the concession, that trial counsel had been ineffective in not presenting a corpus delicti challenge. Id. at 764, 887 P.2d 911. The conviction was reversed and the case remanded for a new trial. Id. at 765, 887 P.2d 911.
¶ 34 The current case has elements of all three of the just-noted cases. In all of them the victim did not report any penetration, while the offender admitted penetration. Biles and Mathis, like the current case, involved discrete incidents that were the only charged offenses. As in Biles, the victim here reported an erect penis rubbing against her private parts. As in Mathis, the victim also reported an incident of the defendant's hand inside her pajamas touching her private *759 area without expressly describing penetration. Like C.D.W., there was no objection in the trial court and the challenge is presented here as an ineffective assistance of counsel claim.
¶ 35 There also were some differences. In Mathis, the defendant's in-court testimony, agreeing that he had made the statement to the police, was considered in corroboration. In Biles the victim's testimony that the touching "hurt" and that her father's penis was "wet" afterwards were considered corroboration of the penetration element. There is no similar evidence in this case.
¶ 36 It is a close case whether there is sufficient corroboration of the element of penetration to admit Mr. Lopez Angulo's statement. There is arguably more pertinent corroboration than was found sufficient in Mathis (hand in underwear, in-court admission[2]), but not as much as in Biles. However, we think that these three cases applied a stricter than necessary standard for establishing the corpus delicti. The traditional requirement of a "criminal act" was replaced, unnecessarily in our view, by a requirement that a specific element (penetration) be established. That is not the way the corpus delicti is applied in other types of cases. As noted previously, the requirements in a homicide case are the fact of death and a criminal agency as the cause of death. Lung, 70 Wash.2d at 371, 423 P.2d 72; Aten, 130 Wash.2d at 655, 927 P.2d 210. There is no requirement that the appropriate mental state (intent, recklessness, negligence), premeditation (in a first degree murder charge), or identity of the killer, all of which would have to be established beyond a reasonable doubt to prove a case, be established in order to admit an incriminating statement. In essence, the gravamen of a homicide case is a dead body and a non-natural cause of death.
¶ 37 The gravamen of a child rape prosecution is a sexual act with a minor. Where, as here, a young child describes an act of attempted sexual intercourse, we believe that there is sufficient evidence to admit the defendant's statement that he succeeded in achieving penetration, even though his victim did not know that fact. The child described a criminal act. Under traditional principles of the evidentiary corpus delicti rule as stated in Meyer and its numerous progeny, that should be sufficient to admit the statement. The evidentiary corpus delicti rule involves not a question of which crime was committed, but whether one was committed. The rule was not designed as a method of distinguishing one crime from another. Rather, it is a safeguard to ensure that an incriminating statement relates to an actual offense.
¶ 38 Brockob confirms that the crime involved must be the one charged. We understand that opinion to mean that the corroboration (here, the victim's testimony) and the defendant's incriminating statement must relate to the same charged incident. Evidence of a different, uncharged other crime (e.g., stealing pseudoephedrine) does not corroborate the charged offense (e.g., possession of pseudoephedrine with the intent to manufacture methamphetamine). Here, the child victim and the defendant each described the same two events, which were the bases for the criminal charges. There is no conflict with the requirements of Brockob.
¶ 39 There also would be no difference in outcome in the three other noted child rape cases under this approach. Clearly the defendant and victim in Biles were describing the same criminal act, and did so in sufficient detail to show that child sexual abuse occurred. Mathis likewise established a concurrence between the victim's testimony showing a criminal act, the defendant's statement, and the charged crime. That concurrence was lacking in C.D.W. There, multiple criminal acts were described by the victim, and different criminal acts were described by the defendant. Only the defendant's testimony described an act of rape consistent *760 with the charged crime. In that circumstance, there was no reason to believe that the victim and defendant were describing the same incident. Accordingly, the corpus delicti was not established and the case was properly remanded for a new trial.
¶ 40 In addition to being consistent with the traditional application of the corpus delicti rule, the outcome here is consistent with the purpose of the rule. There was no danger of a false confession resulting in a conviction for a crime that had not occurred. Indeed, the victim's testimony showed that either child molestation (improper contact with the sexual organs of a child) or attempted child rape occurred. Permitting the defendant's confession to help establish what specific crime occurred does not involve the danger of wrongly convicting a person for a crime that did not happen.
¶ 41 Tying the corroboration requirement of the corpus delicti rule too closely to the elements of the charged offense also could easily result in unnecessarily excluding extremely relevant and probative evidence and doing so without furthering the purpose of the rule. Changing the facts of this case a little will illustrate the problem. In a hypothetical first degree child rape prosecution, nine-year-old victim V provides testimony that is unclear about whether or not the defendant D actually penetrated her. D confessed to the police that he did so, and the jury heard the testimony about the confession. Given the uncertainty of the evidence, the court instructs the jury on the lesser included offense of attempted first degree child rape.[3] If the jury acquitted on the rape count, but returned a verdict on the lesser crime of attempted rape, the defendant could challenge post hoc the admission of his confession on the basis that the verdict established there was no evidence of penetration and the confession should have been excluded.[4] Conversely, if V described an act of penetration but D's confession denied doing so and described only an act of molestation, would the corpus delicti rule require exclusion of the confession since it went to an uncharged crime of molestation? The result of such an overly element-based rule is that prosecutors would have to charge the crime defendant confessed to, rather than actually committed, in order to admit the statement.
¶ 42 We do not think the purpose of the corpus delicti corroboration rule is served by trying to apply it to the elements of the crime rather than focusing on whether a criminal act has been established. The rule was designed to protect against false confessions. It is not a tool to regulate the means of proving related offenses. The testimony of S. established that a criminal act of the same basic nature as the charged offense, and involving the same incident, had occurred. The corpus delicti rule requires nothing more.
¶ 43 In light of this conclusion, the statements were properly admitted and we do not believe counsel erred in failing to raise a corpus delicti challenge. Mr. Lopez Angulo has not established that he received ineffective assistance of counsel. Accordingly, the convictions for first degree child rape are affirmed.
¶ 44 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.
¶ 54 The convictions are affirmed.
I CONCUR: KULIK, J.
SCHULTHEIS, C.J. (dissenting).
¶ 55 The majority's opinion overrules multiple opinions of the divisions of this court as well as Washington Supreme Court precedent. It also changes the manner in which the corpus delicti rule is applied in Washingtona result the parties neither sought nor had an opportunity to oppose. Because I believe the majority's overhaul of the rule is unnecessary and inconsistent with established precedent, I must respectfully dissent.
*761 ¶ 56 In order to satisfy the corpus delicti rule, the State must present evidence independent of the defendant's incriminating statement to corroborate the statement before its admission. State v. Brockob, 159 Wash.2d 311, 327-28, 150 P.3d 59 (2006). The Washington Supreme Court made clear in Brockob, its most recent opinion on the corpus delicti rule, that "the State must present evidence independent of the incriminating statement that the crime a defendant described in the statement actually occurred." Id. at 328, 150 P.3d 59. The independent evidence must "corroborate[] not just a crime but the specific crime with which the defendant has been charged." Id. at 329, 150 P.3d 59.
¶ 57 Here, according to Ricardo Lopez Angulo's statement as related by the officer which was disavowed by Mr. Lopez Angulo at trial as coercedMr. Lopez Angulo admitted to penetrating S.S. with his finger on one occasion and with his penis on another occasion. The events described formed the basis of two counts of first degree child rape. The independent evidence must corroborate that specific crime, not merely a crime.
¶ 58 For instance, in Brockob, one of the defendants in the consolidated case gave an incriminating statement to police: that he was stealing an ephedrine-based decongestant to sell to someone else who planned to manufacture methamphetamine. Id. at 330, 150 P.3d 59. At his trial for possession of ephedrine with the intent to manufacture methamphetamine, the State could corroborate only possession of ephedrine but not the defendant's incriminating statement of his intent to manufacture. Id. at 332, 150 P.3d 59. The defendant's incriminating statement was improperly admitted and without it, there was insufficient evidence to sustain the conviction. Id.
¶ 59 In State v. Meyer, 37 Wash.2d 759, 764, 226 P.2d 204 (1951), the court did not describe the confession or the evidence, choosing instead to indicate that "the evidence of this sordid affair" satisfied the court that "a group of male persons had sexual intercourse" with a female incapable of consent. Because the independent evidence of a rape was sufficient to corroborate the confessions, the confessions were properly admitted. Id. The court held that, although the identity of the perpetrator and knowledge were not elements of the corpus delicti of rape, sexual intercourse is a component of the corpus delicti. Id. at 763, 226 P.2d 204.
¶ 60 Sexual intercourse meansas it did at the time Meyer was decided and as it has always meantpenetration, however slight. RCW 9A.44.010(1); Meyer, 37 Wash.2d at 764, 771, 226 P.2d 204; State v. Cunday, 57 Wash.2d 122, 122-25, 356 P.2d 609 (1960) (outlining the history and evolution of rape statutes). But the majority here holds that the corpus delicti of child rape is merely "a sexual act with a minor." Majority at 759. This conclusion is inconsistent with the majority decision in Brockob. Instead, the majority opinion is consistent with the dissenting opinion in Brockob that claimed the purpose of the rule was merely to ensure that "`some evidence, however slight, supports an inference that a crime was committed.'" Brockob, 159 Wash.2d at 329, 150 P.3d 59 (quoting dissent at 354, 150 P.3d 59). The Brockob majority rejected that position and unequivocally stated that the rule "requires that the evidence support not only the inference that a crime was committed but also the inference that a particular crime was committed." Id. The majority's repeated reference to "a criminal act" rather than the criminal act charged is therefore erroneous. See, e.g., majority at 759.
¶ 61 The majority lowers the bar for the corpus delicti requirements of rape because, it asserts, the bar is similarly lowered for the corpus delicti requirements for other types of cases. It points to homicide cases, for which the corpus delicti rule requires the State to present evidence independent of the defendant's confession to prove (1) the fact of death and (2) a causal connection between the death and a criminal act. State v. Aten, 130 Wash.2d 640, 655, 927 P.2d 210 (1996); see majority at 759. While I agree that there is a lower corpus delicti standard for homicides, I find no other examples involving specific crimes where the bar is set so low.[1]
*762 ¶ 62 The majority relies on State v. Lung, 70 Wash.2d 365, 371, 423 P.2d 72 (1967), which held that a body or body part of the decedent was not required to show the fact-of-death element in a homicide when "the circumstances surrounding the disappearance of the victim [are] such as to convince the mind to a moral certainty of death, and to the exclusion of every other reasonable hypothesis." The court did not relieve the State of the burden of proving the fact-of-death element; it merely specified the quantum of circumstantial evidence that would be required to prove the element. Otherwise, the court noted, the corpus delicti rule "would operate as a complete shield against punishment for his crime and afford him absolute immunity if he were cunning enough to destroy the body or otherwise conceal its identity." Id.
¶ 63 Just as evidence of death is required for the corpus delicti of homicide, sexual intercourse or penetration has been recognized as the sine qua non of rapeit is the body of the crime to which the term corpus delicti refers. E.g., Meyer, 37 Wash.2d at 763, 766, 226 P.2d 204; State v. Nieto, 119 Wash.App. 157, 165, 79 P.3d 473 (2003) ("Under [the corpus delicti] rule, the court may not consider [the defendant's] alleged confession unless the State has established, through independent proof, that [the defendant] had intercourse with [the victim] before her 16th birthday."); State v. C.D.W., 76 Wash.App. 761, 764, 887 P.2d 911 (1995)("Because the confession was the only evidence of one of the elements of child rape"penetrationthe confession was not admissible); State v. Mathis, 73 Wash.App. 341, 345, 869 P.2d 106 (1994)(identifying the corpus delicti of third degree child rape as "penetration of the 14-year-old child"); State v. Thorne, 43 Wash.2d 47, 59, 260 P.2d 331 (1953)(corpus delicti of the charged crime of carnal knowledge of an 8-year-old girl requires corroborating evidence of "sexual penetration, however slight"); see State v. Clevenger, 69 Wash.2d 136, 139, 417 P.2d 626 (1966)("The corpus delicti of incest consists of (1) an act of sexual intercourse (2) between male and female persons within the prohibited degrees of relationship to each other."). Sexual intercourse or penetration is the certain act that forms the basis of the criminal charge. See Meyer, 37 Wash.2d at 763, 766, 226 P.2d 204 (holding that the State must establish two components to satisfy the corpus delicti rule: (1) the occurrence of a certain act or result, which is the basis of the criminal charge and (2) the existence of a criminal agency as the cause of the act or result).
¶ 64 Our statutes do not describe any crime as a "sexual act with a minor." See majority at 759. For instance, the varying degrees of child molestation involve sexual contact, defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2); RCW 9A.44.083, .086,.089. "To establish the corpus delicti of first degree child molestation, the State had to establish, independent of Defendant's confession, that touching of the sexual organs *763 occurred." State v. Ray, 130 Wash.2d 673, 679, 926 P.2d 904 (1996). But the gravamen of each of the varying degrees of child rape is sexual intercourse. RCW 9A.44.073, .076, .079. Sexual intercourse or penetration is an indispensable aspect of the corpus delicti. The evidence presented in this case is insufficient to establish the body of the crime charged heresexual intercourse or penetration.
¶ 65 The record shows that S. testified she went to bed in her pajamas, fell asleep, and woke up to discover that Mr. Lopez Angulo was on top of her, touching her. She testified that Mr. Lopez Angulo touched her both outside and inside her pajamas. When shown a drawing of a girl and asked where Mr. Lopez Angulo was touching her, S. drew a circle around the girl's genital area.
¶ 66 Describing the second incident, S. testified she went to sleep and woke up to discover Mr. Lopez Angulo on top of her. She testified that he touched her in the same area where he touched her during the first incident and there was no difference in the way he touched her. S. said that Mr. Lopez Angulo was on top of her, "going up and down." Report of Proceedings (Aug. 21, 2007) (RP) at 88. She said that he was naked with his private parts exposed. When asked if Mr. Lopez Angulo's private parts were "like soft or were they like a stick," S. selected the latter. RP at 89. Referring to a drawing of a male, she was asked to mark the area she was talking about. S. drew a circle around the male's genital area. The following testimony was then taken:
[PROSECUTOR:] ... [D]id [Mr. Lopez Angulo's] private parts touch any part of you?
[S.:] Yes.
[PROSECUTOR:] Where did they touch you?
[S.:] Down there.
RP at 89-90.
¶ 67 S. pointed to the female drawing when asked where she was touched. She also responded to questioning that she felt something "[d]own there." RP at 91. Detective Dale Wagner testified that in interviews with S., she described that Mr. Lopez Angulo's hip movement occurred during the second incident but she did not mention penetration of any kind. Detective Wagner testified that S. told him she felt "something weird" during the second encounter, but responded that S. did not indicate that "she felt something weird inside of her." RP at 132, 133 (emphasis added).
¶ 68 Evidence of "a mere touching of a female child's sexual organ with that of a male" does not necessarily lead to a logical conclusion that penetration, however slight, occurred. State v. Olsen, 42 Wash.2d 733, 736, 258 P.2d 810 (1953). S.'s described sensation of "something weird" is not prima facie proof of penetration. This evidence is in contrast to the pain experienced by the three- to four-year-old victim in State v. Biles, 73 Wash.App. 281, 282-86, 871 P.2d 159 (1994). In Biles, this court held that the defendant's statement to police was corroborated by evidence that there was genital contact, which the victim said "`hurt her and she cried.'" Id. at 285, 871 P.2d 159.
¶ 69 Similarly, in Thorne, 43 Wash.2d at 53-54, 260 P.2d 331, corpus delicti was established by two types of evidence: (1) the defendant's statements from which it could be inferred that he had some inappropriate sexual contact with his daughter and (2) the testimony of a doctor who examined the child that evening and stated that there had been some penetration and it could have been by a male genital organ. See Preston v. State, 157 Tex.Crim. 228, 242 S.W.2d 436, 439 (1951) (corpus delicti proven under facts that victim was attacked and knocked out, awoke in the bushes with "soreness in her female organs" and a physician found a grass "`between one and two inches deep in her privates'").
¶ 70 The investigating detective failed to establish penetration in his private interviews with S. At worst, S. testified that using his erect "private parts," Mr. Lopez Angulo touched S. "down there" and made humping motions on top of her. This independent evidence does not lead to a logical and reasonable conclusion that S. was penetrated.
¶ 71 The purpose of the corpus delicti rule is to "prevent ... the possibility that a false *764 confession was secured by means of police coercion or abuse [and] the possibility that a confession, though voluntarily given, is false." City of Bremerton v. Corbett, 106 Wash.2d 569, 577, 723 P.2d 1135 (1986). Mr. Lopez Angulo asserts that his confession was coerced. Application of the rule in this case is wholly consistent with its purpose.
¶ 72 The Washington Supreme Court has declined, on numerous occasions, to relieve the State of the burdens imposed by the corpus delicti rule. Ray, 130 Wash.2d at 679, 926 P.2d 904; State v. Smith, 115 Wash.2d 775, 784, 801 P.2d 975 (1990); Corbett, 106 Wash.2d at 578, 723 P.2d 1135. Just two years ago, the court unapologetically declared our State as being in the minority of courts that apply a corpus delicti rule requiring the State to present evidence to independently corroborate the incriminating statement. Brockob, 159 Wash.2d at 328-29, 150 P.3d 59. Our rule is in contrast to the more relaxed rule used by federal courts, which requires the State to present only independent evidence sufficient to establish that the incriminating statement is trustworthy. Id. This court is constrained by this binding precedent.
¶ 73 Moreover, judicial restraint should be exercised rather than advancing a paradigm not briefed, argued, or suggested by the parties. We are limited by the issues as framed by the parties unless "the parties ignore a constitutional mandate, a statutory commandment, or an established precedent." City of Seattle v. McCready, 123 Wash.2d 260, 269, 868 P.2d 134 (1994).
¶ 74 For these reasons, I would reverse the conviction and remand for a retrial. C.D.W., 76 Wash.App. at 765 n. 2, 887 P.2d 911.
NOTES
[1] The court later rejected and overturned the old "multiple hypothesis" doctrine for circumstantial evidence, ruling that circumstantial evidence was to be treated the same as direct evidence and that juries should not be given an instruction that they could only rely upon circumstantial evidence if it was inconsistent with innocence. See State v. Gosby, 85 Wash.2d 758, 766, 539 P.2d 680 (1975); State v. Rockwell, 86 Wash.2d 393, 394-395, 544 P.2d 1250 (1976); State v. Bencivenga, 137 Wash.2d 703, 711, 974 P.2d 832 (1999).
[2] While the corpus delicti rule does not apply to in-court testimony, we need to bear in mind the Aten court's concern about one potentially false statement corroborating another and question how much weight a defendant's own testimony should be given in establishing corroboration. Of course, if a defendant takes the stand and admits committing the charged crime, his out-of-court admission is probably of little consequence.
[3] An attempt to commit a charged crime is always an included offense that can be considered by a jury when the evidence supports an instruction on the crime. RCW 10.61.003.
[4] This is similar to the facts of Marselle where the defendant's admission was considered and apparently disregarded by the jury, which returned a verdict on the included offense.
[1] See Brockob, 159 Wash.2d at 331-32, 150 P.3d 59 (corpus delicti required independent proof of intent for the charge of possession with ephedrine with intent to manufacture methamphetamine); State v. James, 104 Wash.App. 25, 36-37, 15 P.3d 1041 (2000) (where statutory elements of bail jumping include a knowing failure to appear after release by court order or bail with a requirement of a subsequent personal appearance, for the purposes of corpus delicti, it is not necessary that evidence conclusively establishes all elements, but there must be "an inference that the failure to appear was knowing"); State v. Phillips, 94 Wash.App. 829, 974 P.2d 1245 (1999) (knowledge is part of the corpus delicti of domestic violence as a felonious violation of a court order; State's admission of the return of service on the subject order of protection was held to be sufficient independent evidence to corroborate defendant's admission that he knew that the protective order existed and establish the corpus delicti); but see State v. Mason, 31 Wash.App. 41, 48, 639 P.2d 800 (1982) (independent proof of intent is not required "when that element of the crime charged provides merely the degree of the generic crime charged").

It is noted that because "crimes such as attempt, conspiracy, perjury, and reckless or drunken driving do not require the first corpus delicti element, injury or loss[,] ... the more appropriate application of corpus delicti is to prove that the crime charged has been committed by a particular person." State v. Smith, 115 Wash.2d 775, 781, 801 P.2d 975 (1990) (citation omitted).