

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 SEP 29 AM 9: 41

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)  DIVISION ONE
        Appellant, )
)  No. 70359-5-I
v. )
)  UNPUBLISHED OPINION
JESUS G. NAVARRO, a.k.a. )
JESUS GASPAR-NAVARRO, )
)
        Respondent. )  FILED: September 29, 2014
_____ )

DWYER, J. — Jesus Navarro appeals from the judgment entered on a jury's

verdict finding him guilty of trafficking in stolen property in the second degree.

He contends that (1) the State failed to establish the corpus delicti[1] of the

charged crime, and (2) his constitutional right to a public trial was violated during

the exercise of peremptory challenges. Finding no error, we affirm.

I

On September 9, 2012, Frederick and Sue Ayre woke to discover that

their Bellevue home had been burglarized during the night. Many items were

missing from their home, including three digital cameras, one desktop computer,

three laptop computers, four iPads, three cell phones, one iPod, one handmade

leather bag, one purse, one Bluetooth headset, credit cards, and their son's

---

[1] Corpus delicti literally means "body of the crime." State v. Aten, 130 Wn.2d 640, 655, 927 P.2d 210 (1996).

ADD[2] medication.

During its investigation of the burglary, the Bellevue Police Department obtained information indicating that Navarro had purchased some of the stolen items. After obtaining a search warrant for Navarro's home in SeaTac, Washington, the police—while waiting to execute the warrant—observed Navarro leave his home in a vehicle. The police followed Navarro to a local convenience store where they arrested him. Navarro was then transported back to a location near his home. There, Officer Gregory Oliden read Navarro his Miranda[3] rights. Navarro waived his rights and agreed to speak with Oliden.

Oliden told Navarro that the police intended to recover stolen property at his home and asked Navarro where the stolen items were located. When Oliden described each item, Navarro "would tell [Oliden] exactly where it was inside of his house." Navarro told Oliden that his friend Luis and another person had brought him some electronics items, which he placed in a small room at his home. Navarro provided a description of Luis and told Oliden that Luis brought him things occasionally.

Based on Navarro's description of Luis, Oliden formed a belief that Luis was actually Brandon Rangel, who had been arrested in connection with the burglary of the Ayres' home. Navarro stated that he paid Luis $200 for two cameras, one laptop, and one iPod. Navarro admitted that he pawned the iPod, sold the laptop to a friend, and kept the cameras stored in the small room at his

---

[2] Attention deficit disorder (also known as attention deficit hyperactivity disorder).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

home.

When Oliden asked Navarro whether he knew from whence Luis had obtained the property, Navarro said that he did not know where the property had come from, but he admitted, "everyone knows it was stolen." When Oliden asked Navarro how he knew that the items had been stolen, "[Navarro] just said that he didn't know exactly because they didn't tell him exactly where it came from. But [Navarro] said, again, I believe he said multiple times, everyone knows it was stolen."

The police executed the search warrant and entered the small room that Navarro had described to Oliden. The "very small room" was "messy" and was detached from the house. Inside the room, the police found items belonging to the Ayre family, including one handmade leather bag, one Bluetooth headset, two cameras,[4] and bottles of ADD medication prescribed to the Ayres' son. Also found was a Social Security card belonging to a woman named Betty Gordon. Although Gordon's purse containing her Social Security card had been taken from her car in September 2012, she had not reported the incident to the police because she did not believe that the purse contained anything of value.

On October 2, 2012, the State charged Navarro with trafficking in stolen property in the first degree. The State later amended the information to add a count of identity theft in the second degree.

During jury selection, the trial judge directed the attorneys to exercise their peremptory challenges in writing. The judge informed the parties that the court

---

[4] The cameras still contained a memory card with pictures belonging to the Ayre family.

- 3 -

clerk would record which party struck which juror in the clerk's minutes. This occurred while court was in session, the courtroom remained accessible to the public during the exercise of peremptory challenges, and the court reporter made a verbatim record of which jurors had been excused and the order in which they had been excused. The clerk's minutes stated, in pertinent part, "Peremptory challenges are exercised."

The jury was then empaneled, and the State proceeded to present its case in chief. At the close of the State's case in chief, Navarro moved to dismiss the charge of trafficking in stolen property in the first degree, arguing that the State had failed to establish the corpus delicti of the charged crime. This was so, he contended, because any evidence tending to show his intent to sell or otherwise dispose of stolen property came in the form of statements that Navarro had given to members of law enforcement. Navarro's motion was denied.

Thereafter, the jury was instructed as to the charged crimes and the lesser offense of trafficking in stolen property in the second degree. The jury did not reach a verdict as to either of the crimes charged in the information. Instead, it found Navarro guilty of trafficking in stolen property in the second degree.

On April 12, 2013, Navarro was sentenced to 196 days in custody with credit for time served, ordered to pay restitution to the victims, and prohibited from contacting the victims.

Navarro appeals.

II

According to Navarro, the State failed to present sufficient evidence to

independently corroborate the crime described in his incriminating statements. Given the absence of independent evidence, Navarro argues, the trial court erred by denying his motion to dismiss the charges against him and by permitting the jury to consider his incriminating statements in reaching a verdict. Consequently, he argues, the State's failure to establish the corpus delicti of the charged crime should result in a reversal of his conviction. We disagree.

"The corpus delicti rule was established to protect a defendant from the possibility of an unjust conviction based upon a false confession alone." State v. Vangerpen, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995); accord State v. Dow, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010). The rule is often summarized as follows:

> "The confession of a person charged with the commission of a crime is not sufficient to establish the *corpus delicti*, but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession.
>
> The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof. It is sufficient if it *prima facie* establishes the *corpus delicti*."

State v. Aten, 130 Wn.2d 640, 656, 927 P.2d 210 (1996) (quoting State v. Meyer, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951)). "The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration *of the crime described in a defendant's incriminating statement*." State v. Brockob, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). "'Prima facie,' in this context, means that there is evidence of sufficient circumstances which would

support a logical and reasonable inference of the facts sought to be proved." Vangerpen, 125 Wn.2d at 796. In reviewing whether sufficient independent evidence exists, the evidence must be viewed in the light most favorable to the State. Brockob, 159 Wn.2d at 328; Aten, 130 Wn.2d at 658.

"A person who knowingly . . . traffics in stolen property, is guilty of trafficking in stolen property in the first degree." RCW 9A.82.050(1).[5] "'Traffic' means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19).

Viewing the evidence in the light most favorable to the State, we conclude that the State adduced evidence independent of Navarro's incriminating statements that provided prima facie corroboration of the crime that was described in his incriminating statements. The significant independent evidence offered by the State is summarized below.

- Navarro had a small room on his property that was inaccessible from his home;

- The room was "messy" and in "disarray;"

---

[5] Navarro's motion to dismiss was directed to the charged crime of trafficking in stolen property in the first degree. We, thus, analyze his claim accordingly. Our decision would be no different had he sought dismissal of the charge of trafficking in stolen property in the second degree.

- A number of the items stolen from the Ayre family were found stored in the room, including a handmade leather bag, a Bluetooth headset, two of the cameras, and bottles of ADD medication prescribed to the Ayres' son;

- The items stolen from the Ayre family were all valuable; and

- Other stolen property was found stored in the small room.

Viewed in the light most favorable to the State, a logical and reasonable inference to be drawn from this evidence is that Navarro used the small room on his property as a location to store the Ayres' stolen property (that he had come to possess) while he attempted to sell or otherwise dispose of the stolen goods. The valuable items of stolen property, which were kept haphazardly along with other stolen property in a small and messy room detached from Navarro's home, were being stored in a manner that was at odds with retention for personal use and enjoyment. Given these facts, it is logical and reasonable to infer that Navarro "inten[ded] to sell . . . or otherwise dispose of the property to another person." RCW 9A.82.010(19).[6]

Furthermore, the facts in this case are distinguishable from those in Brockob, which Navarro argues is controlling. In Brockob, our Supreme Court concluded that possession of 15 to 30 packages of stolen Sudafed was insufficient to establish an intent to manufacture methamphetamine. 159 Wn.2d

---

[6] Navarro cites to Aten in support of his assertion that, even in the event that the independent evidence supported a logical and reasonable inference of the facts sought to be proved by the State, so long as the independent evidence also supported a hypothesis of innocence, it was insufficient to corroborate his admission of guilt. We have previously rejected this interpretation of Aten. State v. Hummel, 165 Wn. App. 749, 766-70, 266 P.3d 269 (2012), review denied, 176 Wn.2d 1023 (2013); State v. Rooks, 130 Wn. App. 787, 803-06, 125 P.3d 192 (2005). Relying on our reasoning in Hummel and Rooks, we again reject it here.

at 331-32. However, in that case, the State offered no independent evidence—such as proof that the defendant possessed other items used in the manufacturing process—to corroborate the defendant's incriminating statement. Brockob, 159 Wn.2d at 331-32. In contrast, the State here offered sufficient independent evidence to corroborate Navarro's incriminating statements.

Nevertheless, again citing to Brockob, Navarro argues that the independent evidence was required to be, in and of itself, sufficient to support his conviction: "Without Navarro's statements, the State cannot prove the charge." Navarro's interpretation of Brockob is untenable. See Brockob, 159 Wn.2d at 328 ("The independent evidence need not be sufficient to support a conviction, but it must prove prima facie corroboration of *the crime described in a defendant's incriminating statement.*").

Yet, our Supreme Court recently observed, "the State must still prove every element of the crime charged by evidence independent of the defendant's statement." Dow, 168 Wn.2d at 254. Ostensibly, this observation substantiates Navarro's position; however, as we explained in State v. Hummel, 165 Wn. App. 749, 266 P.3d 269 (2012), review denied, 176 Wn.2d 1023 (2013), the Dow court's statement was unfounded dictum.

> First, the sentence was entirely unnecessary to resolve Dow. It was undisputed that there was no evidence, other than the defendant's statements, to establish that the charged crime had been committed. Thus, the court had no reason to analyze or elaborate on the quantum of proof necessary to establish the corpus delicti because there was none, and the court's statement on this issue was "wholly incidental" to the decision. Statements made in the course of the Supreme Court's reasoning that are "wholly incidental" to the basic decision constitute dicta and do not

bind us. See Burress v. Richens, 3 Wn. App. 63, 66, 472 P.2d 396 (1970).

> . . . Although the statement . . . was followed by a citation to Brockob, as noted in the citation itself, that case held only that "[a] defendant's incriminating statement alone is not sufficient to establish that a crime took place." Brockob, 159 Wn.2d at 328, X O. . . . Moreover, the Brockob court explicitly stated, "The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in a defendant's incriminating statement." Id.

165 Wn. App. at 764-66.

Neither Brockob nor Dow stands for the proposition that evidence independent of a defendant's incriminating statement must be, in and of itself, sufficient to prove a defendant's guilt. Instead, it remains true that the corpus delicti of a crime may be established by offering evidence independent of a defendant's incriminating statement, so long as that evidence provides prima facie corroboration of the crime that was described in the incriminating statement. In this case, because the evidence adduced by the State provided prima facie corroboration of the crime that was described in Navarro's incriminating statements, we conclude that the corpus delicti was established.

III

Navarro next contends that the trial court improperly allowed the parties' counsel (while court was in open session) to exercise peremptory challenges in writing. This, Navarro asserts, was a court closure[7] and—given that no Bone-

---

[7] In violation of the Sixth Amendment to the United States Constitution, U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."), and both article I, section 10 ("Justice in all cases shall be administered openly, and

Club[8] inquiry was undertaken—constituted structural error.[9]

Similar arguments have recently and consistently been rejected by Washington's appellate courts. State v. Webb, No. 43179-3-II, 2014 WL 4212735 (Wash. Ct. App. August 26, 2014); State v. Dunn, 180 Wn. App. 570, 321 P.3d 1283 (2014); State v. Love, 176 Wn. App. 911, 309 P.3d 1209 (2013).[10] There was no error.

Affirmed.

We concur:

_____

_____

_____

---

without necessary delay.") and article I, section 22 ("In criminal prosecutions the accused shall have the right . . . to have a speedy public trial.") of the Washington Constitution.

[8] State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995).

[9] State v. Wise, 176 Wn.2d 1, 288 P.3d 1113 (2012).

[10] The court reporter made a verbatim record of which jurors were excused. The court clerk's inadvertent failure to follow the court's direction and record in the clerk's minutes which party struck which juror does not present an open court issue.